[No. G001232. Fourth Dist., Div. Three. Jan. 22, 1986.]

In re the Marriage of CARLA and GALE WAGONER.
CARLA WAGONER, Respondent, v.
GALE WAGONER, Respondent;
PHILIP FLICKINGER, Appellant.

**COUNSEL**

Corbett, Steelman & Davidson and Mark S. Rosen for Appellant.

Carla Wagoner, in pro. per., for Respondent.

**OPINION**

**CROSBY, J.**—Does the superior court have jurisdiction to compel an attorney of record in a domestic action, who has not been formally joined as a party, to pay monies in accordance with the terms of a stipulated order in which he was designated to disburse the funds? *Yes.*

I

Philip Flickinger represented the husband in an action for legal separation. The parties stipulated to an order providing, "Community business, Desert Litho Printing, [is to] be ordered sold." The "[p]roceeds from the sale of the community business, Desert Litho Printing, are to be deposited in [Flickinger's] trust account to be distributed as agreed herein." The agreement listed these disbursements: (1) "[R]espondent to pay directly to petitioner's parents, Mr. & Mrs. Don Brooks, via cashier's check the sum of $7500.00 payable forthwith upon sale of the business." (2) "[F]rom the proceeds of the sale of the community business . . . community debts not

to exceed $5,000.00 to be subtracted." And "for the purpose of accounting, . . . the date July 12, 1983 [will] be the closing date for the community involvement in the business Desert Litho Printing." (3) Wife "to receive from the sale of the business the sum of $7,750." Another part of the stipulation added, "Husband shall pay directly to attorney for wife $1500.00 fees . . . payable in installments of $1,500.00 upon sale of business." Flickinger, as well as his client, signed the stipulation.

Husband created an escrow to sell the business in October 1983, but arranged instead for the buyers to pay the proceeds, $28,000, to him directly. He then gave Flickinger $11,415.52 with instructions to pay $7,500 to wife, approximately $2,000 toward obligations of the business, and $2,000 to *Flickinger* as attorneys fees. Husband failed to deposit any additional sums with Flickinger, and neither he nor Flickinger made any payment to wife's parents or her attorney in accordance with the stipulated order. Flickinger, who received $2,000 under the new directions, but was entitled to nothing under the order, followed his client's instructions (and his own self-interest).

On December 30, 1983, wife filed an order to show cause in contempt and a motion to join the two buyers of the business and Flickinger. She also sought a "mandatory injunction" to compel Flickinger to release the money in his trust account to her attorney pending disposition of the litigation and obtained a temporary restraining order to freeze the funds. These matters were noticed for hearing on January 19, 1984, although only the "mandatory injunction" against Flickinger was actually considered at that time.

Flickinger submitted a declaration in which he admitted having conceded to wife's attorney "that if the $28,000.00 was paid that the stipulation should [have been] followed." He added, without explanation, that his "client had changed his mind regarding the stipulation, which he had a right to do." Flickinger did not claim the community debts he paid at husband's direction accrued before the stipulated closing date of July 12, 1983, although he later did so as to some of them in another declaration in support of a motion for reconsideration. He disingenuously added, "It is my client who broke his agreement . . . not me" and brazenly closed with a demand for sanctions. Flickinger did not appear at the hearing, but was represented by counsel who contended the court had no jurisdiction over his client without first joining him as a party.

The court disagreed, finding Flickinger had assumed the role of trustee in the sale of the community business and on that basis was subject to court order without joinder. He was ordered to pay $3,500 to wife's attorney's

trust account, and a subsequent motion to modify or set aside the order was denied.

## II

■ Generally, an order to pay money may not be entered against one who is not a party to the action. (*Environmental Coalition of Orange County, Inc.* v. *Local Agency Formation Com.* (1980) 110 Cal.App.3d 164, 173 [167 Cal.Rptr. 735].) And an attorney does not become a party simply by virtue of his role as counsel or by receiving a community asset. (*Spencer* v. *Spencer* (1967) 252 Cal.App.2d 683, 686 [60 Cal.Rptr. 747].)

But in *Spencer,* a case Flickinger relies on, the court held it was proper in a dissolution proceeding to join *former* attorneys of record by means of an order to show cause for the purpose of determining the validity of a claimed lien for attorneys fees which blocked disbursal of trust account funds. Flickinger, on the other hand, was an attorney of record in a case that had not even concluded. Thus, the procedure followed here was clearly adequate to join him as a party for the purpose of reviewing his performance of the terms of the stipulated order per the *Spencer* decision.

Flickinger seems to suggest, however, that this aspect of *Spencer* has been supplanted by the rules of court and he may now only be made a party to this proceeding pursuant to those rules, i.e., on noticed motion in the prescribed form (Cal. Rules of Court, rule 1253). He had not been so joined at the time of this order and, consequently, argues it was in excess of the court's jurisdiction.

As we shall explain, there was no need to engage in an elaborate procedure to join Flickinger (or to resort to an injunction for that matter). A simple order to the attorney of record in an unconcluded matter was sufficient, especially under the circumstances of this case. Moreover, an opinion appearing after promulgation of rule 1253 again approved the joinder method used in *Spencer* with respect to an attorney and client involved in a postlitigation fee dispute. (*Severdia* v. *Alaimo* (1974) 41 Cal.App.3d 881 [116 Cal.Rptr. 405].) The court's analysis is equally applicable here: "In the instant case the trial court did not purport to make a new and different judgment but to enforce a judgment previously made. Section 4380 of the Civil Code provides that 'Any judgment, order, or decree of the court made or entered pursuant to this part may be enforced by the court by execution, attachment, the appointment of a receiver, contempt, *or by such other order or orders as the court in its discretion may from time to time deem necessary.*'" (*Id.,* at p. 889, italics added by the court.) Thus, if it was necessary

to join Flickinger as a party, the procedure, although not in strict compliance with the rules of court, was adequate under case law.

We do not believe it was necessary, however. As an attorney of record, Flickinger was subject to the directions of the court concerning property of the parties entrusted to him. The rationale of joining third persons holding or claiming an interest in assets of the spouses as parties to the action is to afford them due process, i.e., notice and an opportunity to be heard in the trial and appellate courts. (*Environmental Coalition of Orange County, Inc.* v. *Local Agency Formation Com., supra,* 110 Cal.App.3d 164, 173.) An attorney of record has better notice than the client, however, for the notices are sent to him. Similarly it is the attorney, not the client, who literally has the opportunity to be heard. As to the right to appeal, "a final order on a collateral matter directing the payment of money" is appealable by one who was not formerly a party. (*Baugeuss* v. *Paine* (1978) 22 Cal.3d 626, 634, fn. 3 [150 Cal.Rptr. 461, 586 P.2d 942].) The somewhat tautological rationale is, "Although he was not a party in the main action, he was made a party of record in the collateral matter by the court's order." (*Ibid.; In re Marriage of Fuller* (1985) 163 Cal.App.3d 1070, 1073, fn. 1 [210 Cal.Rptr. 73].) In summary, attorneys who voluntarily appear of record receive the privileges of officers of the court. Most attorneys also understand what Flickinger apparently does not: Duties are involved as well. If he did not want to be treated as an attorney, Flickinger should not have accepted the case. If he did not wish to be a trustee of other people's money, he should have declined the responsibility.

█ Flickinger's contention that he cannot be joined because, having disbursed all the funds, he no longer "controls an interest subject to disposition in the proceeding . . ." is also meritless (Cal. Rules of Court, rule 1250). Joinder, as we have said, was unnecessary; and the court's power over him flowed not from the res, as he contends, but from his own status as attorney of record in an ongoing lawsuit and voluntary trustee under a written stipulation, which had been approved as an order of the court. Flickinger's argument amounts to this: The liability of one who violates a trust disappears upon the completion of the malfeasance. Moreover, Flickinger still "controls" the $2,000 he paid to himself in violation of the stipulated order; if he has exhausted that money and is now indigent, he may make that defense in the contempt proceeding brought to enforce the present order.

As to the $1,500 difference between the amount ordered returned and the fees Flickinger paid to himself, which sum represents money allegedly disbursed for debts of Desert Litho, he failed, in his original opposition to the motion, to show they were accrued before the stipulated closing date "for

community involvement." He did belatedly make that claim as to a portion of the money on motion for reconsideration, but utterly—and fatally—failed to explain his omission to do so before. There is no basis to reverse the trial court's refusal to credit him with any portion of those payments.

■ Flickinger's final claims are even less persuasive. First, he contends, "Paragraph 5 of the stipulation provided that Gale Wagoner would pay *directly* to the attorney for his wife $1,500 fees upon sale of the business. The stipulation did not state that this sum would be paid from the proceeds of the sale of the business." (Italics added.) Not so.

As quoted at length above, the agreement provided proceeds from sale of the business were to be placed in Flickinger's "trust account to be distributed as agreed herein." The attorneys fees of $1,500 were specifically to be paid in a lump sum "upon sale of the business." This portion of the agreement was all handwritten. The words husband "would pay directly," the gist of Flickinger's classic "lawyer's argument," were merely part of the preprinted form utilized for the stipulation. The attorneys fee portion of the form is designed for the usual domestic case, where installment payments of attorneys fees are the rule. The words "would pay directly" obviously were to have no literal application here; the inconsistent handwritten language, as the trial court impliedly found, clearly proves the point.

Second, Flickinger claims his client's diversion of the funds from the escrow cut off his own responsibility to disburse the proceeds of the sale of the business. How was he supposed to know, he asks in all innocence, that the source of the money provided to him by husband was that event? The contention is laughable: The stipulated order mentions no escrow at all, merely that Flickinger will disburse the proceeds of the sale of the family business. Moreover, the trial court did not lack for evidence that Flickinger knew the source of the funds he received. His own declaration states, "After the stipulation was entered into, Mr. Wagoner proceeded to find a purchaser for the business. Apparently, an escrow was opened by Mr. Wagoner at this time; however, I had no knowledge of the escrow. The prospective buyer, Mr. Young, contacted me during the negotiations. I advised Mr. Young that he could proceed to pay for the business and that he should make the check payable to myself and Gale Wagoner. Mr. Young agreed to do so. Thereafter, Mr. Young gave the entire $28,000 to Mr. Wagoner, payable to Wagoner alone." Flickinger knew the source of the money Wagoner transmitted to him.

### III

Wife repaid the community debt to her parents with the money she received from Flickinger, the only money she has seen as a result of these

proceedings since the sale of the business. She now apparently has insufficient funds to hire counsel. Although she appeared at oral argument, she filed no respondent's brief; nor, unfortunately, did she seek sanctions for a frivolous appeal.

We find Flickinger's conduct throughout to reflect very poorly on him in particular and the legal profession in general. He has violated a trust, overreached an adversary, and done a disservice to an overburdened judicial system. This sort of activity may inspire great literature on occasion: E.g., "The first thing we do, let's kill all the lawyers." (Shakespeare, 2 Henry VI, act IV, s. ii.) But it does nothing for public confidence in the law or its practitioners.

The order is affirmed. The clerk is directed to forward a copy of our opinion to the State Bar for its own evaluation of the professional conduct involved. Appellant shall bear his own costs.

Trotter, P. J., and Sonenshine, J., concurred.