[No. C006703. Third Dist. Aug. 23, 1990.]

In re the Marriage of DEA and STAVROS P. ECONOMOU.
DEA ECONOMOU, Respondent, v.
STAVROS P. ECONOMOU, Appellant.

COUNSEL

Steering & Seidenberg and Jerry L. Steering for Appellant.

W. Urie Walsh for Respondent.

OPINION

**DeCRISTOFORO, J.**—This is the third in a series of appeals by husband Stavros Economou following the dissolution of marriage between husband and wife Dea Economou.[1] Husband appeals from two postjudgment orders issued by the trial court in an effort to provide for child support and to distribute the community assets, following the marriage dissolution. Husband contends the court erred in barring husband from seeking further affirmative relief until he complied with existing court orders. Husband also argues the court erred in ordering all assets from a Georgia bank account be delivered to wife. We find absolutely no merit to husband's contentions and we find the appeal to be frivolous. Moreover, we find husband's pursuit of meritless arguments a misuse of this court's resources. Accordingly we sanction husband $15,000 to be paid to wife, and we sanction husband and his attorney jointly and severally $15,000 to be paid to this court.

FACTUAL AND PROCEDURAL BACKGROUND

Wife filed for dissolution of marriage following a 13-year marriage which produced 2 children. During the course of litigation concerning the identity and value of community property assets, husband repeatedly defied court orders to provide financial information to wife regarding community assets in California, Georgia and Greece. Time and again the court gave husband opportunities to avoid sanctions, and time and again husband refused to provide the requested information.

[1] We grant both parties' requests that we judicially notice the files and pleadings in two prior appeals before this court: 3 Civil No. C004089 and 3 Civil No. C005090.

Faced with husband's continued failure to respond to court ordered discovery, the court issued an order entering husband's default on all issues in the proceedings except dissolution, child custody, and visitation. The order precluded husband from offering any evidence, making any objections, or cross-examining any of wife's witnesses at trial on any issues except dissolution, custody, and visitation. The parties refer to this order as the "issue sanctions."

Following a four-day court trial, the court entered a judgment ["the judgment"] finding husband had misappropriated and concealed millions of dollars in community assets. The court noted: "The court finds that Respondent [husband] has been wilful, persistent and flagrantly disobedient of the Orders of this Court, specifically as found in Orders filed herein on 9/1/87, 10/29/87, 12/21/87 and 6/3/88, and, by Respondent's failure to appear at trial. [¶] The court further finds that Respondent has engaged in obstructive tactics, both before this Court and in resisting the court ordered Receivership in Georgia." The court also entered a judgment on bifurcated issues, finding the parties held property and cash in Georgia as tenants in common.

Following the trial and entry of judgment, husband owed $17,369.53 in unpaid child support, $280,000 in unpaid spousal support and $253,000 in unpaid court ordered attorney's fees to be paid to wife's attorneys.

Wife sought an order requiring husband to comply with existing court orders before seeking further relief from the trial court. Husband filed no written opposition.

The court granted wife's request and prohibited husband from "seeking any affirmative relief in this Court until Respondent is in full compliance with any previous Orders of this Court including but not limited to Respondent's obligation to pay child and spousal support to the Petitioner and to pay the sum of $253,000 to Petitioner as and for attorney's fees. . . ."[2]

---

[2] The court in an earlier order enumerated the previous orders husband had failed to comply with:

"*A. Order filed May 15, 1987*

"(i) Failed to provide Petitioner adequate, or, any documentation showing the withdrawals of passive funds by Respondent;

"(ii) Failed to submit to Petitioner documentary verification of taxes paid;

"(iii) Failed to cooperate in any respect, or, at all, with any of the court's orders with reference to distribution of passive income;

"(iv) Failed to cooperate in obtaining or providing information pertaining to business entities and ventures; and,

"(v) Failed to provide tax information to Petitioner, or, at all.

"*B. Order filed September 21, 1987.*

"(i) Failed to pay $27,000.00 in attorney's fees to Petitioner's counsels;

Shortly after, husband's attorney, who had power of attorney for husband's Georgia bank accounts, contacted Georgia Federal Bank (the bank) in Georgia where husband had an account. Husband's attorney requested that the bank's attorney send him one-half of the funds held in husband's name.

The bank's attorney contacted wife's counsel and told him of husband's attorney's request. Wife then filed a motion requesting a temporary restraining order, and requesting that the court appoint husband's attorney as special trustee of the parties for "any and all funds received by him belonging to the parties or either of them pending a full hearing." Wife also requested an expedited hearing on the disposition of the funds, arguing they should be turned over to her to satisfy outstanding child and spousal support. The court granted wife's request, and husband's attorney was appointed special trustee and served with a temporary restraining order.

Thereafter the bank sent husband's attorney a check for $87,272.83 made payable to husband. At the hearing on disposition of the $87,272.83, husband's attorney argued the check sent to him by the bank in husband's name was intended for him as reimbursement for attorney's fees for past and future services. In his declaration, husband's attorney claimed the funds were sent to him to pay off $14,000 in past fees and the balance in anticipation of substantial future litigation fees and costs.

The court issued an order requiring husband's attorney to turn over the entire sum to wife. The $87,272.83 would be applied to outstanding child support, with an additional $6,000 to be set aside for a child support reserve (Civ. Code, § 4701.1, subd. (c)). The balance would be applied to partially satisfy the outstanding money judgment and "as a return of principal in order to attempt to equalize the distribution of community property because any other distribution to the Petitioner would be unfair and inequitable."[3] In addition, the court stated: "[N]o other person and/or entity had or

---

"(ii) Failed to pay $75,000.00 to Petitioner's accountant;
"(iii) Failed to prepare and file a complete financial statement and balance sheet byOctober 1, 1987 or, at all; and,
"(iv) Failed to return the $1.8 million plus accretions and/or interest to the State of California by October 1, 1987 or, at all.
"C. Order filed October 2, 1987.
"(i) Failed to pay Petitioner additional attorney fees, on account of $17,000.00; and,
"(ii) Failed to pay Petitioner additional costs of $5,000.00.
"D. Order filed October 29, 1987.
"(i) Failed to comply with the order of the Court to comply with Petitioner's request for production of documents."
[3] In addition to outstanding child and spousal support and attorney's fees, husband owed interest on the cash equalizing portion of the judgment in the amount of $268,000.20.

had any present or future claim and/or lien and/or title to said $87,272.83 save and except the rights of the Petitioner with respect to monies due to her from respondent by virtue of this Court's Order and/or Judgment."

Both orders were entered and husband filed a timely notice of appeal.

## I.

■ Husband argues the trial court erred in barring him from seeking affirmative relief until he complied with prior court orders. Husband contends the issue sanctions the trial court had previously imposed on him were the "maximum and 'ultimate' sanction allowable under California law." Therefore, the court's order restricting him from relief until he complied with previous orders was improper.

We disagree. Code of Civil Procedure section 128 states: "Every court shall have the power: [¶] . . . (4) [t]o compel obedience to its judgments, orders, and process, and to the orders of a judge of a court, in an action or proceeding pending therein." In addition, Code of Civil Procedure section 187 expands upon the court's powers "[w]hen jurisdiction is, by the constitution or this code, or by any other statute, conferred on a court or a judicial officer, *all the means necessary to carry it into effect are also given*; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this code or the statute, *any suitable process or mode of proceeding may be adopted* which may appear most comfortable to the spirit of this code." (Italics added.)

Therefore, the issue sanctions imposed by the trial court pursuant to Code of Civil Procedure section 2023, subdivision(b)(2), were not the "maximum and 'ultimate' sanction allowable under California law." The court had the power and authority to compel husband's compliance with its previous orders regarding child support, spousal support and attorney's fees and costs, by denying husband further affirmative relief. As the court in *Brown* v. *Brown* (1971) 22 Cal.App.3d 82 [99 Cal.Rptr. 311] at page 84 stated: "Every court has power to compel obedience to its judgments and orders, and a court of equity retains inherent jurisdiction to oversee and enforce execution of its decrees." (Citation omitted.)

## II.

■ Husband also contends the trial court erred in ordering his counsel to turn over the $87,272.83 from the Georgia account to wife. Husband argues the transfer was not a fraudulent conveyance, and therefore it cannot be attached, garnished or levied upon by the court.

Husband's argument misses the point. The trial court made *no* finding that any conveyance was fraudulent. In fact, there was *no conveyance* involved; the Georgia bank released the funds held in *husband's* account by sending husband's attorney a check issued in *husband's* name. Husband's fraudulent conveyance argument is bogus.

We find the trial court acted within its discretion in applying the funds toward child support, both owing and future payments, and toward satisfying the money judgment outstanding against husband.

"A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life." (Civ. Code, § 4720, subd. (e).) Civil Code section 4700, subdivision(a)(1) states: "All payments of support shall be made by the person owing the [child] support payment prior to the payment of any debts owing to creditors." Therefore, we find the court did not err in ordering husband's attorney to turn over the proceeds of the Georgia bank account to wife to cover past and future child support. (See *In re Marriage of Wagoner* (1986) 176 Cal.App.3d 936, 940-942 [222 Cal.Rptr. 479].)

Nor did the court err in applying the balance of the $87,272.83, after child support, to partially satisfy the outstanding money judgment. Civil Code section 4380 gives the court power to enforce family law orders and judgments ". . . by such other order or orders as the court in its discretion may from time to time deem necessary." Faced with husband's recalcitrance and refusal to obey the court's orders, the court was within its discretion in awarding the $87,272.83 from the Georgia account to wife.[4] Moreover, the court issued its order after a hearing at which both sides presented oral arguments. The order was accompanied by 14 specific findings made by the court regarding the Georgia account and the funds owed wife by husband.

Given husband's indefatigable attempts to evade the court's orders, the court properly made an order it "deemed necessary."

### III.

Wife seeks sanctions for a frivolous appeal under Code of Civil Procedure section 907 and California Rules of Court, rule 26(a). Under Code of Civil Procedure section 907, "[w]hen it appears to the reviewing

---

[4] We utterly reject husband's meager attempt to convince us that wife's attorney and the Georgia bank somehow "contrived" to send the funds in husband's name to facilitate wife's ultimate receipt of the $87,272.83. Husband's contention is pure speculation and is unworthy of further discussion.

court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." California Rules of Court, rule 26(a) provides in pertinent part: "Where the appeal is frivolous or taken solely for the purpose of delay . . . the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require."

The Supreme Court in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179] set forth the standard by which we determine whether an appeal is frivolous: "The California cases discussing frivolous appeals provide a starting point for the development of a definition of frivolous. Those cases apply standards that fall into two general categories: subjective and objective. The subjective standard looks to the motives of the appellant and his or her counsel. . . . [¶] The objective standard looks at the merits of the appeal from a reasonable person's perspective. 'The problem involved in determining whether the appeal is or is not frivolous is not whether [the attorney] acted in the honest belief he had grounds for appeal, but whether any reasonable person would agree that the point is totally and completely devoid of merit, and, therefore, frivolous.' . . . [¶] The two standards are often used together, with one providing evidence of the other. Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay. . . . [¶] Both strands of this definition are relevant to the determination that an appeal is frivolous. An appeal taken for an improper motive represents a time-consuming and disruptive use of the judicial process. Similarly, an appeal taken despite the fact that no reasonable attorney could have thought it meritorious ties up judicial resources and diverts attention from the already burdensome volume of work at the appellate courts. ▮ *Thus, an appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit.*" (*In re Marriage of Flaherty, supra,* 31 Cal.3d at pp. 649-650.) (Italics added, citations omitted.)

However, *Flaherty* also cautions us that "any definition [of a frivolous appeal] must be read so as to avoid a serious chilling effect on the assertion of litigants' rights on appeal. Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely they will win on appeal. An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions." (*Flaherty, supra,* 31 Cal.3d at p. 650.)

▮ Under no legal analysis can we conclude that any of husband's contentions are "arguably correct." As we have explained, husband's

contentions, unsupported by either the facts of this case or citations to relevant case law, lack merit.

Moreover, we conclude that husband's appeal is not merely without merit, but fits within *Flaherty*'s definition of "frivolous." Husband has brought this appeal for no other reason than to harass wife and delay distribution of the couple's community property assets. The effect of these tactics by husband has been to force wife to exhaust a substantial sum she has recovered under the judgment in the effort to identify and collect community assets. In its order transferring the funds from the Georgia account to wife, the court noted, "[husband] [s]eems to be obsessed with the idea that somehow he's going to consume all the money in taxes and attorney's fees and somehow he's going to damage the Petitioner here." This, in our view, constitutes the harassment condemned by *Flaherty.*

As the court in *National Secretarial Service, Inc.* v. *Froehlich* (1989) 210 Cal.App.3d 510, 526 [258 Cal.Rptr. 506] reasoned: "It is perhaps time that the courts, both trial and appellate, begin to speak and react more forcefully with respect to cases such as this one. Such an abuse of the legal system for no other purpose than to avoid paying a legitimate claim simply can no longer be tolerated. It is not fair to the opposing litigant who is victimized by such tactics and it is not fair to the greatly overworked judicial system itself and those citizens with legitimate disputes waiting patiently to use it. In those cases where such abuse is present, an award of substantial sanctions is proper."

As husband's counsel, Jerry Steering bears some responsibility for this appeal. Despite his client's continuing refusals to obey numerous court orders, Mr. Steering has filed this third in a series of appeals. (5) "An attorney in a civil case is not a hired gun required to carry out every direction given by the client. (Bus. & Prof. Code, § 6068, subd. (c).) As a professional, counsel has a professional responsibility not to pursue an appeal that is frivolous or taken for the purpose of delay, just because the client instructs him or her to do so. (Former rule 2-110(C), Rules Prof. Conduct.) Under such circumstances, the high ethical and professional standards of a member of the bar and an officer of the court require the attorney . . . to withdraw from the representation of the client." (*Cosenza* v. *Kramer* (1984) 152 Cal.App.3d 1100, 1103 [200 Cal.Rptr. 18].)

From the record (i.e., counsel's claim that part of the $87,272.83 was for future legal services), it appears husband and his attorney Mr. Steering are contemplating a barrage of further lawsuits and appeals against wife. Mr. Steering has become the vehicle through which husband can stymie and frustrate both wife and the court. Thus, while husband may

have the prime responsibility in this matter, Mr. Steering, by acquiescing in husband's unrelenting zeal to forestall the court's orders, made husband's wasteful and frivolous appeal possible. (See *Young* v. *Rosenthal* (1989) 212 Cal.App.3d 96, 133-135 [260 Cal.Rptr. 369].)

■ In determining the appropriate relief, the underlying policy of Code of Civil Procedure section 907 should control. The object of imposing a penalty for a frivolous appeal has two components: to discourage further frivolous appeals; and to compensate for the loss which results from the delay. In determining the amount of sanctions we consider the facts surrounding the appeal and the effect of the delay. (*Young* v. *Rosenthal, supra*, 212 Cal.App.3d at p. 134.)

■ In the present case we believe sanctions payable both to wife and the clerk of the court are appropriate. Wife is not the only party damaged by husband's frivolous appeal. "Others with bona fide disputes, as well as the taxpayers, are prejudiced by the wasteful diversion of an appellate court's limited resources." (*Young* v. *Rosenthal, supra*, 212 Cal.App.3d at p. 136; *Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1, 17 [244 Cal.Rptr. 581].) The handling of this appeal has imposed a burden on this court. At appellant's request, we have reviewed the record in the present case, and in husband's two previous appeals. The responsibility for the imposition of this burden on our judicial system rests with husband and his attorney. The history of husband's appeals reveals a pattern of confrontation, dispute and acrimony against wife coupled with a complete repudiation of the court's orders and authority.

■ Because of due process considerations, "[p]enalties for prosecuting frivolous appeals should not be imposed without giving fair warning, affording the attorney an opportunity to respond to the charge, and holding a hearing. Further, when imposing sanctions, the court should provide the attorney with a written statement of the reasons for the penalty." (*Flaherty, supra*, 31 Cal.3d at p. 654.) Fair warning has been given regarding a possible sanctions award as to wife. Wife requested sanctions in the trial court and renewed her request in her reply brief. Wife requests $15,000 as the reasonable costs of defending this (third) appeal.

■ Prior to oral argument we directed the clerk of this court to give written notice to all counsel that we were considering an award of sanctions under *Finnie* v. *Town of Tiburon, supra*, 199 Cal.App.3d at pages 17-18, that respondent was directed to submit a competent evidentiary showing as to how her requested sanctions had been calculated, that appellant and his counsel were directed to show cause by their response why the requested sanctions should not be granted, and that all counsel should be prepared to

discuss the matter of sanctions at oral argument. Thereafter, and pursuant to this court's direction, the parties submitted their respective memoranda and declarations relative to sanctions.

However, while wife's attorney appeared for oral argument at the scheduled time, husband's attorney failed to appear or advise the court of his absence or any reason therefor. The matter was then ordered submitted.

In this case the sanctions to be awarded wife are most properly measured by the reasonable attorney's fees incurred by wife in responding to husband's appeal. We have determined from our review of the record and an examination of the briefs filed that the amount of reasonable attorney's fees incurred by wife is $15,000, which shall be paid by husband.

In addition, after careful consideration of all the facts of this case, we determine the proper total cost to the state assignable to this case is the sum of $15,000. This sanction is levied jointly and severally against husband and husband's attorney.

## DISPOSITION

The judgment is affirmed. Wife shall receive costs on appeal. We find this appeal to be frivolous. We therefore assess, as sanctions against husband and to be paid to wife in addition to the costs of appeal, the sum of $15,000.

In addition, sanctions are also assessed against husband and his attorney Mr. Steering jointly and severally in the sum of $15,000, which said sum shall be paid to the clerk of this court.

This opinion constitutes a written statement of our reasons for imposing sanctions as required by *In re Marriage of Flaherty, supra*, 31 Cal.3d 637, 654. Pursuant to the requirements of Business and Professions Code, section 6089, subdivision (b), a copy of this opinion shall be forwarded to the State Bar of California.

Puglia, P. J., and Marler, J., concurred.