120 Cal.Rptr.2d 216 (2002)
98 Cal.App.4th 678
Mary C. KEITEL, Plaintiff and Respondent,
v.
George W. HEUBEL et al., Defendants and Appellants.
No. A095703.
Court of Appeal, First District, Division Two.
May 21, 2002.
As Modified June 3, 2002.
As Modified on Denial of Rehearing June 18, 2002.
Review Granted July 17, 2002.
*218 Daniel Ray Bacon, Fresno, Attorney for Appellants.
Brian R. Dinday, Attorney for Respondent.
*217 HAERLE, J.

I. INTRODUCTION
Mary Keitel obtained a judgment for fraud and undue influence against her brother George Heubel and George's wife, Peggy. A jury found that the Heubels deprived Keitel of her fair share of her mother's estate. The day before entry of a $361,267 judgment against the Heubels, they transferred their real estate into a revocable trust. Keitel then obtained an order permitting a writ of execution against the real estate held in the revocable trust in order to satisfy her judgment. The Heubels filed the instant appeal, challenging the trial court's order permitting the writ of execution. Keitel maintains this appeal is baseless and has sought sanctions for the filing of a frivolous appeal.
While this appeal was pending, the Heubels filed a petition seeking protection from creditors pursuant to Chapter 13 of the Bankruptcy Code. The Heubels and their appellate counsel now maintain that the bankruptcy petition precludes this court from making a decision in this case or from imposing any sanctions on them for their conduct during the pendency of this appeal. We hold the Heubels' federal bankruptcy case does not preclude us from imposing monetary sanctions against the Heubels and their appellate counsel for filing a frivolous appeal and for failing to notify us concerning the filing and status of the Heubels' bankruptcy case.

II. FACTS AND PROCEDURAL HISTORY
The issues presented on appeal require only a brief summary of the evidence supporting the jury's verdict in the underlying *219 action against the Heubels. The Heubels unduly influenced Caroline Heubel (Caroline), Mary Keitel and George Heubel's mother, by extracting from her various documents, including a power of attorney, which allowed them to accomplish transfers of realty, bank accounts, and other assets to their sole control. Although Caroline had made clear her desire that her estate be divided equally between her children upon her death, when Caroline died, the Heubels gave Keitel a small sum and kept the bulk of Caroline's estate for themselves without ever filing a probate action. After Keitel learned the Heubels had removed virtually everything from Caroline's estate with inter vivos transfers, she brought the underlying action claiming she had been deprived of her rightful share of her mother's estate by the Heubels' fraud and undue influence.
On June 6, 1997, Keitel obtained a jury verdict against the Heubels in the amount of $361,267. The verdict was based upon special findings of undue influence, fraud by intentional misrepresentation, fraud by concealment, and fraud by false promises. Judgment was entered and filed on June 20, 1997. The Heubels appealed that judgment and specifically challenged the sufficiency of the evidence to support the verdict. On February 25, 1999, we affirmed the judgment, which is now final. (Keitel v. Heubel (Feb. 25, 1999, A079982) [nonpub, opn.].)
Meanwhile, on June 19, 1997, the day before judgment was entered, the Heubels executed and recorded four grant deeds. In each case, the Heubels granted real property to Mike Lunardi, Angela Lunardi and Sarah Heubel as "Co-Trustees of The George William Heubel and Peggy Anne Heubel Blind Trust dated June 19, 1997." A "Declaration of Trust" executed by the Heubels that same day described the George William Heubel and Peggy Anne Heubel Blind Trust as a "revocable living trust." In the trust instrument, the Heubels expressly reserved the right to "revoke this trust at any time." The instrument also provided that, if the trust was revoked, ownership of the trust property reverted to the Heubels.
When Keitel attempted to levy and execute upon the Heubels' realty to satisfy her judgment, the Heubels sent the Sheriff of Alameda County (the Sheriff) copies of the grant deeds they executed on June 19, 1997. In a letter to the Sheriff dated August 9, 1998, the Heubels stated: "With this letter, we are providing you with copies of grant deeds, . .. showing how the subject properties are owned.... The properties described are in the possession and control of the Trust as stated on each of the attached deeds." The Heubels concluded their letter as follows: "Again: we are not the owners of record and were not at the time of levy. In consideration of the above, a legal sale of this property cannot take place simply because we are not the owners of the properties referenced in the Notice of Levy."
Thereafter, the Sheriff refused to execute on the realty that the Heubels transferred into their trust without a court order authorizing him to do so. Keitel sought a court order clarifying that, under California law, the Sheriff was authorized to pursue judgment execution on realty transferred into a revocable, inter vivos trust by a judgment debtor. The trial court issued the requested order on July 3, 2001 (the July 3 order).
In the July 3 order, the court found "that the George William Heubel and Peggy Anne Heubel Blind Trust dated June 19, 1997, is a trust for which the settlors retained the power to revoke the trust in whole within the meaning of Probate Code section 18200 and, accordingly, the trust property is subject to the claims of creditors of George William Heubel and Peggy Anne Heubel." Thus, the court ordered: "A writ of execution may issue against the Trustees of the George William Heubel and Peggy Anne Heubel Blind Trust dated June 19, 1997."
*220 The Heubels filed a notice of appeal from the July 3 order on July 17, 2001. The appellants' opening brief was filed on November 9, 2001. On December 28, 2001, the Heubels filed a voluntary joint petition under Chapter 13 of the Bankruptcy Code. Neither the Heubels, their appellate counsel Daniel Bacon, nor their bankruptcy counsel William Marini, gave this court notice of the bankruptcy petition. We learned about the petition on February 19, 2002, when we received a letter from Keitel's counsel, Brian Dinday. According to his letter, it occurred to Dinday at some point after all the briefing in this appeal was complete that nobody had informed the court about the Heubels' bankruptcy case.
On February 27, 2002, we ordered the parties to appear at a hearing before this court to address two issues: (1) whether the Heubels' bankruptcy petition stayed proceedings in this case and (2) whether the Heubels and their counsel should be sanctioned for failing to notify the court about the bankruptcy case.[1] The parties addressed these issues both in writing and at a hearing before us on March 14, 2002.
On May 7, 2002, we notified the Heubels and their appellate counsel, pursuant to rule 26(e) of the California Rules of Court, that we were considering imposing sanctions on them for filing a frivolous appeal and we gave them 10 days to file a written response to our proposed course of action.[2]

III. DISCUSSION

A. The Bankruptcy Petition

The first question we must address is whether the automatic stay resulting from the Heubels' bankruptcy petition precludes us from taking any further action with respect to this appeal.
Section 362 of the Bankruptcy Code states, in relevant part: "(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of[f] (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." (11 U.S.C. § 362.)
When, as here, a bankruptcy debtor is a party in an appeal, the court must decide whether the appeal is a "commencement or continuation" of an "action or proceeding against the debtor." (11 U.S.C. § 362.) The majority of courts that have addressed the issue have concluded that the relevant inquiry is whether the original proceeding, i.e., the underlying action, was brought *221 against the debtor. (See Parker v. Bain (9th Cir.1995) 68 F.3d 1131, 1136 & fn. 6, and cases cited therein; Shah v. Glendale Federal Bank (1996) 44 Cal.App.4th 1371, 1378, fn. 5, 52 Cal.Rptr.2d 417 (Shah).) In other words, an appeal is not a commencement of an action and the fact that a debtor is the appellant is not determinative. If the original proceeding was brought against the debtor, an appeal in that proceeding is stayed even if the appeal is brought by the debtor. (Parker, at p. 1136 & fn. 6; Shah, at p. 1378, fn. 5, 52 Cal.Rptr.2d 417.) Although we have found no California authority directly on point, the majority view was endorsed in Shah, supra, 44 Cal.App.4th at pages 1377-1379, 52 Cal.Rptr.2d 417. The Shah court found that the automatic stay did not apply to an appeal commenced by a debtor-plaintiff because that appeal was "a continuation, within the meaning of section 362(a)(1), of an action brought by the debtor; rather than against the debtor." (Id. at p. 1377, 52 Cal.Rptr.2d 417.)
The present appeal is a continuation of a judicial proceeding brought against the debtors to recover on a claim that arose prior to the commencement of the Heubels' bankruptcy case. Thus, the automatic stay applies to this judicial proceeding "[e]xcept as provided in subsection (b)" of section 362. (11 U.S.C. § 362(a).) Subdivision (b) identifies proceedings that are excepted from the automatic stay. The exception relevant to this case provides that the filing of a petition "does not operate as a stay[¶] ... under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's ... police and regulatory power." (11 U.S.C. § 362(b)(4).) This government regulatory exception to the automatic stay "`prevents] the bankruptcy court from becoming a haven for wrongdoers.'" (In re Berg (9th Cir.2000) 230 F.3d 1165, 1167 (Berg), quoting O'Brien v. Fischel (D.Hawai'i 1987) 74 B.R. 546, 550 (O'Brien).)
Courts employ two tests to determine whether governmental action is exempted from the automatic stay by virtue of the government regulatory exception, the "`pecuniary purpose'" test and the "`public policy'" test. (In re Berg, supra, 230 F.3d at p. 1167.) "Under the pecuniary purpose test, the court determines whether the government action relates primarily to the protection of the government's pecuniary interest in the debtor's property or to matters of public safety and welfare. If the government action is pursued solely to advance a pecuniary interest of the governmental unit, the stay will be imposed. The public policy test `distinguishes between government actions that effectuate public policy and those that adjudicate private rights.' [Citation.]" (Ibid.)
Applying these tests to the present facts, we find that the automatic stay does not preclude us from imposing sanctions on a party and/or his attorney for abusing the appellate process or otherwise violating the rules of this court. By exercising our authority to impose sanctions we are not pursuing the government's pecuniary interests. Rather we are performing an important regulatory function. Furthermore, exercising our sanction powers effectuates public policy by protecting the public from abusive and obstructive litigation conduct.
The only California case we have found which addresses this issue is this court's decision in Papadakis v. Zelis (1991) 230 Cal.App.3d 1385, 282 Cal.Rptr. 18 (Papadakis ). In that case, an attorney named Zelis was sued by former clients whom he had persuaded to invest in a limited partnership in which he was the general counsel. *222 The litigation was settled pursuant to an agreement which required that Zelis stipulate to a judgment against himself. After various failed attempts by Zelis to undo his agreement, the trial court entered judgment pursuant to the parties' stipulation. Zelis appealed the judgment. This court issued an order to show cause stating that we were considering imposing sanctions against Zelis for filing a frivolous appeal. (Id. at p. 1389, 282 Cal.Rptr. 18.) Zelis responded by notifying the court that he had filed a bankruptcy petition, which he claimed prevented us from considering the imposition of sanctions against him. (Ibid.) In rejecting this argument, we reasoned that courts have inherent regulatory power to prevent abuses of the court system and that the automatic stay is not an "escape mechanism" from the enforcement of this important regulatory power. (Id. at p. 1389, 282 Cal.Rptr. 18.) Thus the bankruptcy statute expressly excepts from the reach of the automatic stay an "`"action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;...."' [Citation.]" (Ibid.) We concluded that "the imposition of sanctions by the courts of this state for attorneys' frivolous or abusive litigation tactics" fell within that statutory exception. (Ibid.)
The abusive litigant in Papadakis was an attorney. Indeed, our holding was reinforced by the fact that courts have a legitimate regulatory interest in punishing the misconduct of professionals who are licensed by the state. (Papadakis, supra, 230 Cal.App.3d at p. 1389, 282 Cal.Rptr. 18.) However, that fact was not essential to our analysis because our power to impose sanctions does not depend on a licensing relationship. A judicial proceeding to impose sanctions is a manifestation of our regulatory power to control proceedings before us, which extends to any participant who engages in improper litigation conduct during those proceedings. A party, no less than his attorney, should not be permitted to escape the consequences of his or her abusive litigation tactics and thus cannot negate our regulatory powers simply by filing a bankruptcy petition. Thus, Papadakis supports our conclusion in the present case that a court's power to impose sanctions on participants in proceedings before it is not affected by the filing of a bankruptcy proceeding by one of those participants.
Our conclusion is also supported by federal authority establishing that the automatic stay is not a safe harbor from sanctions imposed by federal courts. (O'Brien, supra, 74 B.R. 546; Berg, supra, 230 F.3d 1165; Alpern v. Lieb (7th Cir.1993) 11 F.3d 689.) In O'Brien, an attorney filed an individual petition for relief under Chapter 13 of the Bankruptcy Code while a motion for Rule 11 sanctions was pending against him in a case in which he allegedly failed to conduct a "reasonable inquiry" before filing a federal court complaint on behalf of his client. (OBrien, supra, 74 B.R. at p. 548.) The O'Brien court found that, while pecuniary interests were affected by the imposition of Rule 11 sanctions, such interests were those of the parties to the litigation rather than any governmental unit. The governmental interest was the nonpecuniary interest of the federal judiciary "to keep the stream of federal litigation free from unnecessary and abusive legal obstructions." (Id. at p. 549.) Further, the court found that the "imposition of sanctions under Rule 11 is a direct application of the district court's regulatory powers, which serve to protect the general public from needless, harassing, and abusive litigation." (Id. at p. 550.) Therefore, the O'Brien court held that "proceedings to impose sanctions on authority of Rule 11 [of the Federal Rules of Civil Procedure] are not automatically *223 stayed by the filing of a petition in Bankruptcy." (O'Brien, supra, 74 B.R. at p. 550.)
O'Brien was expressly approved by the Ninth Circuit in Berg, supra, 230 F.3d at page 1168. In that case, an attorney named Berg represented a Dr. Smith in a lawsuit against Smith's former employer and in a subsequent appeal. (Berg, supra, 230 F.3d at pp. 1166-1167.) While Smith's appeal was pending, Berg filed his own bankruptcy petition. Thereafter, and without notice of the Berg bankruptcy, the court of appeals affirmed the judgment against Smith and imposed sanctions against Berg for filing a frivolous appeal. The defendant then sought relief from the automatic stay in Berg's bankruptcy case in order to collect its sanctions award. The bankruptcy court ruled that the award of sanctions was not subject to the automatic stay at all. (Id. at p. 1167.) Agreeing, the Ninth Circuit found it "clear that the purpose of such sanctions is to effectuate public policy, not to protect private rights or the government's interest in the sanctioned person's property." (Id. at p. 1168.) Thus, the Berg court held that the "government regulatory exemption exempts from the automatic stay an award of attorneys' fees imposed under Rule 38 [of the Federal Rules of Appellate Procedure] as a sanction for unprofessional conduct in litigation." (Ibid.)
This federal authority supports our conclusion even though we are a state court because "the unavailability of the 362(a) stay as a safe harbor from sanctions is not limited to the Federal forum." (Janis v. Janis (1998) 179 Misc.2d 199, 684 N.Y.S.2d 426, 432 (Janis); see also In re Betts (1994) 165 B.R. 233, 241.) In Janis the Supreme Court of New York held that "as a general proposition, sanctions imposed by a State court are excepted from the automatic stay created under 362(a)." (Janis, supra, 684 N.Y.S.2d at p. 433.) The Janis court used Papadakis to support its conclusion. (Id. at pp. 432-133.) It also relied on federal authority because federal and state court sanctions serve the same function and neither courts' sanctioning authority should be "`delayed indefinitely by a debtor's expedient of declaring bankruptcy.'" (Id, at p. 432, quoting In re Betts, supra, 165 B.R. at p. 241.)
The foregoing authority supports our conclusion that the automatic stay that arose when the Heubels filed their bankruptcy petition during the pendency of this appeal does not protect the Heubels or their appellate attorney from the consequences of their improper actions in this court. Our government regulatory power, which is expressly excepted from the reach of the automatic stay, includes the authority to impose sanctions in order to punish and deter abuses of the appellate process.

B. Sanctions

There are two bases for imposing sanctions against appellants and their counsel in this case. First, this appeal is frivolous and, second, the Heubels and their appellate counsel are guilty of an unreasonable violation of the rules governing appeals.

1. The appeal is frivolous

Keitel has filed a motion asking this court to impose sanctions on the Heubels for filing a frivolous appeal. (See Cal. Rules of Court, rule 26(a)(2) ["If the appeal is frivolous or taken solely for the purpose of delay ... the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require"]; Code Civ. Proc, § 907 ["When it appears to the reviewing court that the appeal was frivolous or taken solely for *224 delay, it may add to the costs on appeal such damages as may be just"].)
An appeal is frivolous and warrants the imposition of sanctions "when it is prosecuted for an improper motiveto harass the respondent or delay the effect of an adverse judgmentor when it indisputably has no merit-when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]" (In re Marriage of Flaherty (1982) 31 Cal.3d 637, 650, 183 Cal.Rptr. 508, 646 P.2d 179 (Flaherty); see also Pierotti v. Torian (2000) 81 Cal.App.4th 17, 31, 96 Cal.Rptr.2d 553.)
In the present case, the lower court based its July 3 order on Probate Code section 18200, which provides: "If the settlor retains the power to revoke the trust in whole or in part, the trust property is subject to the claims of creditors of the settlor to the extent of the power of revocation during the lifetime of the settlor." This provision clearly and explicitly permitted Keitel, as a judgment creditor, to reach real property held in the trust over which the Heubels retained the power of revocation.
The Heubels argue that Probate Code section 18200 does not apply in this case because they never created a valid trust against which Keitel could enforce her judgment. This argument has no merit at all. The five elements required to create an express trust are (1) a competent trustor, (2) trust intent, (3) trust property, (4) trust purpose, and (5) a beneficiary. (Estate of Heggstad (1993) 16 Cal.App.4th 943, 947, 20 Cal.Rptr.2d 433 (Heggstad).) The revocable living trust document that appears in this appellate record meets all these required elements. The document states an intent to create a trust and it identifies the trustmakers, the property to be placed into the trust, the trust's purpose, and the beneficiaries of the trust.
The Heubels claim they did not create a valid trust because there was never any trust property. (See Prob.Code, § 15202 [a "trust is created only if there is trust property"].) The Heubels maintain they transferred their property to the three individuals named in the grant deeds rather than to the trust. But the Probate Code expressly provides that a trust may be created by: "A transfer of property by the owner during the owner's lifetime to another person as trustee." (Prob.Code, § 15200, subd. (b).) Here the evidence clearly shows that the Heubels transferred their property into the revocable trust by executing and recording the grant deeds which conveyed the property to three individuals as "Co-Trustees of The George William Heubel and Peggy Anne Heubel Blind Trust." That transfer was reflected in the declaration of trust itself, which expressly identified the subject properties as assets of the trust and the individuals named in the deeds as trustees of the trust. The law does not require that "the settlor/trustee execute a separate writing conveying the property to the trust." (Heggstad, supra, 16 Cal.App.4th at p. 948, 20 Cal.Rptr.2d 433.)
The Heubels argue that, even if a trust was established, it became invalid after the three trustees resigned subsequent to the transfers of the Heubels' properties to them pursuant to the grant deeds.[3] We are not surprised that the Heubels cite no authority to support this argument as none exists. The role of the trustee, while an important one, is not an essential element for the creation or operation of a trust because the court can always appoint another *225 one. (Prob.Code, § 15660.) Accordingly, the resignations of the trustees did not render the trust invalid.[4]
Finally, the Heubels contend that the July 3 order should be reversed so as not to interfere with a pending action against them in which it is alleged that the Heubels fraudulently transferred their real property in an attempt to defraud creditors. When Keitel discovered that the Heubels transferred their real estate into the revocable trust, she filed an action under the Uniform Fraudulent Transfer Act requesting various forms of monetary and equitable relief. (Bernard, Balgley & Bonaccorsi v. Superior Court (Super. Ct. Alameda County, No. 821290-6).) While there is some factual overlap in these cases, the dispositive issues are wholly distinct. Keitel's separate case does not afford the Heubels any legal basis for delaying enforcement of Keitel's clear right to relief under Probate Code section 18200.
Not one of the arguments advanced by the Heubels in this case has substantive merit. Indeed, their arguments are so weak they compel the conclusion that this appeal was filed solely for the purposes of delay. In particular, the Heubels' argument that this case should not go forward until the fraudulent transfer case has been finally resolved is obviously grounded in a desire to create another roadblock to Keitel being able to satisfy the money judgment that she obtained in 1997 and we affirmed in early 1999.
The July 3 order is supported by sound legal authority. In contrast, the arguments advanced by the Heubels to attack that order have no merit at all. (See fn. 5). The nature of those arguments and the circumstances relating to Keitel's efforts to enforce her judgment compel the conclusion that this appeal is frivolous both because it indisputably has no merit and it was taken solely for purposes of delay.[5](Flaherty, supra, 31 Cal.3d at p. 650, 183 Cal.Rptr. 508, 646 P.2d 179.)

2. Infraction of Rules Governing Appeals

We may impose monetary sanctions pursuant to our own motion for unreasonable violations of the rules governing appeals. *226 (Cal. Rules of Court, rule 26(a)(2); Bryan v. Bank of America (2001) 86 Cal.App.4th 185, 192-193, 103 Cal.Rptr.2d 148; Alicia T. v. County of Los Angeles (1990) 222 Cal.App.3d 869, 884-886, 271 Cal.Rptr. 513; see also Pierotti v. Torian, supra, 81 Cal.App.4th at p. 29, 96 Cal.Rptr.2d 553.)
Rule 11 of the local rules for the Court of Appeal, First Appellate District (Local Rule 11) states in part: "Any party to a matter pending before this court who acquires knowledge of a proceeding in bankruptcy which may cause or impose a stay of proceedings in this court must promptly give notice of such bankruptcy proceedings, as set forth below." (Local Rule 11(a).)
Notwithstanding Local Rule 11, the Heubels did not notify this court of their bankruptcy case. On February 27, 2002, we notified the parties we were considering imposing sanctions on the Heubels and their counsel, Daniel Bacon, for violating Local Rule 11. We received many responses, none of them satisfactory.
In a letter dated March 6, 2002, Bacon claimed he was not aware that his clients filed a bankruptcy case. Bacon explained that the Heubels had stopped communicating with him. However, Bacon also admitted that, at some point, Keitel's counsel informed him about the bankruptcy proceeding. Nevertheless, Bacon apparently believed he did not have actual knowledge of the bankruptcy, and thus no obligation under Local Rule 11, because nobody sent him copies of the bankruptcy papers. We disagree. Furthermore, even if we were persuaded by Bacon's claimed ignorance, our February 27 notice explicitly enlightened Bacon as to both the bankruptcy filing and his obligation to comply with Local Rule 11. Notwithstanding that notice, Bacon continued to ignore his obligations.
Subdivision (b) of Local Rule 11 provides that a party required to give notice under subdivision (a) must file the most recent order of the bankruptcy court and an explanation as to whether and why the automatic stay does or does not apply to the pending appeal. Local Rule 11(c) states: "On the first court days of January, April, July and October, the debtor or other party for whose benefit the stay is taken shall serve and file brief status reports to apprise the court of the current status of the bankruptcy proceedings."
Bacon did not comply with either subdivision (b) or (c) of Local Rule 11. He did not file any order from the bankruptcy court or an April 1 status report regarding the status of that proceeding. In a letter dated April 8, 2002, Bacon opined that the automatic stay does apply to this appeal, but that letter was submitted in response to our direct inquiry and clearly was not an attempt to comply with Local Rule 11. We note that Bacon also advised us that this court does not have jurisdiction to impose sanctions on him or his clients because of the automatic stay. As our analysis above demonstrates, attorney Bacon is simply wrong about that.
The Heubels themselves have filed several written communications in this court. In a letter dated March 24, 2002, the Heubels claimed, among other things, that Bacon failed to keep them informed about the status of this appeal, that Bacon refused to communicate with them, and that Bacon knew the Heubels planned to file a bankruptcy petition. Indeed, the Heubels made the self-defeating disclosure that they told Mr. Bacon "upfront and in no uncertain terms in at least two meetings that we would file bankruptcy before we would allow the property to be sold." In a March 30, 2002, letter to the court, the Heubels expressed the opinion that these appellate proceedings were stayed by the *227 filing of their bankruptcy petition. Finally, in an April 6, 2002, letter, the Heubels suggested we should impose sanctions on Keitel's appellate counsel, Dinday, for violating Local Rule 11 notwithstanding that Dinday is the only participant in these proceedings who has supplied this court with information about the bankruptcy case.
The correspondence we have received from the parties and attorneys in this case raises serious concerns about the Heubels' motive for filing for bankruptcy and the propriety of that proceeding. Those concerns must be addressed in a different forum. At this point we need only observe that there is no satisfactory explanation for appellants' failure to comply with Local Rule 11. Thus, we conclude that sanctions should be imposed on appellants for their "unreasonable infraction of the rules governing appeals." (Cal. Rules of Court, rule 26(a)(2) and rule 26(e).)

C. The Amount of Sanctions

When deciding the amount of sanctions to impose, courts may consider "the amount of respondent's attorney fees on appeal; the amount of the judgment against appellant; the degree of objective frivolousness and delay; and the need for discouragement of like conduct in the future." (Pierotti v. Torian, supra, 81 Cal. App.4th at pp. 33-34, 96 Cal.Rptr.2d 553.) In the present case, the degree of objective frivolousness and delay is extremely high and our desire to discourage like conduct in the future is very strong. As discussed above, there are two independent bases for imposing monetary sanctions in this case. First, this appeal has no substantive merit and was taken solely for purposes of delay. Second, the Heubels have unreasonably violated Local Rule 11. We note, too, that the unreasonable violation of that rule is further evidence that appellants have abused the appellate process in order to delay enforcement of the valid judgment against them.
We also conclude that the Heubels and attorney Bacon should both pay sanctions. The Heubels initiated the appeal and have benefited from the delay. There is ample evidence of their bad faith. While Bacon's motives are less clear, "counsel has a professional responsibility not to pursue an appeal that is frivolous . .. just because the client instructs him or her to do so. (Rule 2-110C, Rules Prof. Conduct.)" (Young v. Rosenthal (1989) 212 Cal.App.3d 96, 134, 260 Cal.Rptr. 369.) Further, it is the attorney's duty "[t]o counsel or maintain those actions, proceedings, or defenses only as appear to him or her legal or just ...." (Bus. & Prof.Code, § 6068, subd. (c); see also Cal. State Bar Rules of Prof. Conduct, rule 3-200.) Finally, as the attorney for the Heubels, Bacon is primarily responsible for the unreasonable infraction of Local Rule 11 if not initially then certainly after this court brought that rule to his attention.
The amount of attorney fees reasonably incurred in responding to a frivolous appeal is an appropriate measure of sanctions. (See In re Marriage of Economou (1990) 223 Cal.App.3d 97, 108, 272 Cal.Rptr. 673; Weber v. Willard (1989) 207 Cal.App.3d 1006, 1011, 255 Cal.Rptr. 165; Finnie v. Town of Tiburon (1988) 199 Cal. App.3d 1, 17, 244 Cal.Rptr. 581.) Keitel has submitted evidence that her attorney fees for responding to this frivolous appeal are $3,900. More recently, Keitel submitted the supplemental declaration of her appellate counsel, Brian Dinday, which pertains to additional services Dinday provided in order to respond to issues relating to the Heubels' bankruptcy and its potential affect on these proceedings. After reviewing that declaration, we conclude that Keitel is entitled to an additional *228 $3,500 to compensate her for fees reasonably incurred in responding to this appeal.[6] Thus, we impose sanctions on the Heubels and Bacon in the amount of $7,400 payable to Keitel.
But Keitel "`is not the only person aggrieved by this frivolous appeal. Those litigants who have nonfrivolous appeals are waiting in line while we process the instant appeal' [Citation.] `In the same vein, the appellate system and the taxpayers of this state are damaged by what amounts to a waste of this court's time and resources. [Citations.] Accordingly, an appropriate measure of sanctions should ... compensate the government for its expense in processing, reviewing and deciding a frivolous appeal. [Citation.]' [Citations.]" (Pierotti v. Torian, supra, 81 Cal.App.4th at p. 35, 96 Cal.Rptr.2d 553.) A recent conservative estimate of the cost to the state of processing an average civil appeal is $6,000. (Id. at p. 36, 96 Cal. Rptr.2d 553.) We find that amount, payable to the clerk of this court, is an appropriate additional sanction in this case.

IV. DISPOSITION
The July 3, 2001, order is affirmed. In addition, the following monetary sanctions are imposed for abuse of the appellate process and unreasonable failure to comply with the rules of court: The Heubels shall pay $3,700 to Keitel and $6,000 to the clerk of this court. Attorney Daniel Bacon shall pay $3,700 to Keitel. The clerk of this court is directed to deposit the sum paid by the Heubels into the general fund. All sanctions shall be paid no later than 15 days after the date the remittitur is filed. Keitel is awarded costs on appeal.
We concur: KLINE, P.J., and LAMBDEN, J.
NOTES
[1] We have considered imposing sanctions on the Heubels' bankruptcy attorney, William Marini. Although we are concerned by Marines role in the events that we have described, we are not willing to delay resolution of this appeal in order to adequately investigate his conduct. Therefore, we offer no opinion as to whether sanctions could be imposed against Marini in this case.
[2] On July 30, 2001, Keitel filed a motion to impose sanctions for the filing of a frivolous appeal; she supplemented this motion on December 28, 2001. As a general rule, the issue of sanctions is argued at oral argument. (Cal. Rules of Court, rule 26(e).) However, notwithstanding Keitel's pending motion, the Heubels waived oral argument on their appeal, and we did not order a hearing on Keitel's motion for frivolous appeal sanctions. However, at the March 14, 2002, hearing, the Heubels' appellate counsel accepted our express invitation to discuss the issue of sanctions for filing a frivolous appeal. At that hearing, this court advised counsel that we considered this appeal to be frivolous, and that issue was thoroughly discussed. The Heubels' counsel also discussed this issue in his written response to our May 7, 2002, notice. At no time prior to his petition for rehearing did counsel request an additional hearing on the issue of frivolous appeal sanctions. In light of these facts, we have concluded that scheduling an additional hearing would serve no useful purpose and would be inappropriate in light of the substantial time and expense already generated by these proceedings.
[3] The Heubels' suggestion that the three trustees became the individual owners of the trust property simply by resigning as trustees is simply ridiculous.
[4] For the same reason, the trustees' resignations did not invalidate the July 3 order. In a May 15, 2002, letter, appellants' counsel responded to our notice that we were considering imposing sanctions for filing a frivolous appeal by arguing, for the first time, that the July 3 order is invalid because it authorizes issuance of a writ against the trustees of the Heubel blind trust and there are no trustees. Although enforcement of the writ may be delayed while a new trustee is appointed, the absence of a trustee does not effect the validity of the order itself.
[5] Our conclusion that this appeal is frivolous is expressly not based on Keitel's argument that the July 3 order is not appealable. Keitel raised this argument in a motion to dismiss, which we indicated would be decided along with the appeal.

The July 3 order is appealable because it was issued after a final judgment to enforce execution of the judgment. (Lakin v. Watkins Associated Industries (1993) 6 Cal.4th 644, 651-654, 25 Cal.Rptr.2d 109, 863 P.2d 179 (Lakin ); Olson v. Cory (1983) 35 Cal.3d 390, 399-400, 197 Cal.Rptr. 843, 673 P.2d 720; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2001) ¶¶ 2:149 to 2:154, pp. 2-66 to 2-70.) A postjudgment order affects a judgment or relates to its enforcement if it determines the rights and liabilities of the parties arising from the judgment, is not preliminary to later proceedings, and will not become subject to appeal after some future judgment. (Lakin, supra, 6 Cal.4th at pp. 654-656, 25 Cal.Rptr.2d 109, 863 P.2d 179.) The July 3 order satisfies these requirements; it was made postjudgment and directed a writ of execution issue against trust property in order to satisfy Keitel's judgment against the Heubels. Furthermore, the July 3 order is analogous to an attachment order, which is expressly made appealable by Code of Civil Procedure section 904.1, subdivision (a)(5).
[6] According to Dinday's supplemental declaration, Dinday billed or intends to bill Keitel an additional $6,930 for 34.65 hours he spent addressing the bankruptcy and sanction issues raised in our February 27, 2002, order and appearing for oral argument on those matters. The declaration references and relies upon an attached "time summary." However, a time summary was not attached. Further, Dinday maintains that the admittedly high number of hours he spent was warranted by the complexity of the issues he was required to address. We question this assumption and, without the benefit of a more detailed explanation of the time spent, we decline to include all of Dinday's claimed additional fees in the sanction award.