55 Cal.App.4th 622 (1997)
COMMUNITY REDEVELOPMENT AGENCY OF THE CITY OF HAWTHORNE, Plaintiff and Respondent,
v.
FORCE ELECTRONICS, Defendant and Appellant.
Docket No. B095278.
Court of Appeals of California, Second District, Division Seven.
June 4, 1997.
*624 COUNSEL
Hill, Farrer & Burrill, Kevin H. Brogan, Dean E. Dennis and Jennifer L. Pancake for Defendant and Appellant.
Kane, Ballmer & Berkman, R. Bruce Tepper, Jr., Joseph W. Pannone and June Ailin for Plaintiff and Respondent.
*625 OPINION
WOODS, J. 

I

INTRODUCTION
In this eminent domain action, The Community Redevelopment Agency of the City of Hawthorne (Agency) condemned, took possession of, and demolished the improvements on the real property of defendant Force Electronics (Force). After final judgment, following a previous appeal to this court, Agency found itself unable to fully pay the amount of just compensation which the jury awarded to Force.
Force then acted pursuant to statute to repossess the property. Agency, which had paid part of the judgment, pled poverty to the trial court, asking it to order the remaining balance owing paid over 10 years with interest.
The trial court granted Agency's motion. Force appealed the postjudgment order, contending that it was error for the trial court to allow an installment pay out of the balance owed to it by Agency and that Force should be permitted to repossess the property under existing statutory law.

II

QUESTIONS PRESENTED
Force frames the issues to be decided on this appeal as follows:
1. When the eminent domain law provides that the condemnee can choose to repossess the condemned property rather than execute on an unpaid eminent domain judgment, can the Agency nullify the condemnee's choice merely because it is in financial trouble?
2. Is making the condemnee into an involuntary lender to an insolvent Agency for 10 years the "full and perfect equivalent" of giving the condemnee back its property?
Agency contends that Force executed an unconditional grant deed thereby relinquishing Force's remedy of repossession under the statute. Accordingly, Agency argues the order allowing it to pay the balance of the judgment in installments should be affirmed.

*626 III

FACTUAL AND PROCEDURAL BACKGROUND
Agency instituted this action against Force and other defendants to acquire property within a 20-acre redevelopment site.[1] All defendants settled prior to the trial of the action with the exception of Force. A bifurcated trial was held as to the compensation due Force. In phase one of the trial, the court sitting as trier of fact found Agency liable to Force for precondemnation damages. In phase two, a jury found Force was entitled to recover $2.8 million for its land and improvements and $325,000 in precondemnation damages. Following the verdict, Force moved for and was awarded litigation expenses under Code of Civil Procedure section 1250.410. Judgment was entered accordingly. Agency filed a timely notice of appeal from the judgment. Agency challenged only those portions of the judgment awarding Force precondemnation damages and litigation expenses.
In our November 23, 1994, opinion we affirmed the trial court.
After resolution of the first appeal, Agency had paid slightly more than $3 million due Force. By March 1995, approximately $800,000 remained unpaid on the judgment.
Under eminent domain law, not later than 30 days after final judgment, the condemner must pay the "full amount required by the judgment." (Code Civ. Proc., § 1268.010, subd. (a), italics added.)[2] If an award remains unpaid after 30 days, the condemnee has the option to obtain a dismissal of the proceedings and repossess the property. (§ 1268.020, subd. (b).) Before bringing a noticed motion to have the property returned, the condemnee must show that it filed in court and served upon the plaintiff, by registered or certified mail, a written notice of plaintiff's failure to pay the full amount within the 30-day period and that an additional 20 days has elapsed after service of the notice without the plaintiff paying the full amount. (§ 1268.020, subds. (b)(2) and (3).)
Force filed and mailed such a notice on February 3, 1995. When Agency did not pay within 20 days of that date, Force noticed a motion to dismiss the *627 proceedings and for return of the property. Force filed that motion on March 16, 1995.
On March 11, 1995, Agency countered with a motion of its own under Government Code section 970.6. Agency asserted that payment of the balance due on the judgment would result in an unreasonable hardship unless the judgment was paid in installments. Agency therefore moved to pay the balance of the judgment in installments over a 10-year period. The motion was supported, as required, by a resolution of the Agency board contending that an unreasonable hardship would result unless the judgment was paid in installments, as well as financial information supporting the Agency's contention that it was insolvent.
Since Force had given Agency an early deed to the property as an accommodation so Agency could transfer title to the redevelopment project developer, Force moved to join the defaulted developer's lender and beneficial title holder, Dai Ichi Kangyo Bank (Dai Ichi), as a necessary and indispensable party, under section 389, subdivision (a), to its motion to repossess the property. The court granted that joinder motion on April 6, 1995. Dai Ichi filed an opposition to Force's motion to repossess the property. Then, Dai Ichi's title company, Ticor Title Insurance Company (Ticor), moved to intervene to oppose Force's motion to dismiss the proceedings and repossess the property. The trial court granted Ticor leave to intervene on May 3, 1995.
The trial court heard both of Force's motions to dismiss the proceedings and repossess the property and Agency's motion to pay in installments on May 16, 1995. The court granted Agency's motion to pay in installments. Because of its favorable ruling on Agency's motion, the trial court declined to rule on the merits of Force's motion to dismiss the proceeding and repossess the property, deeming it moot, and denying it without prejudice.[3]
This timely appeal followed from the May 25, 1995, order granting the Agency's motion to pay in installments. Ticor also appealed the May 25 order, but thereafter dismissed its appeal.

*628 III

DISCUSSION

Harmonizing section 1268.020, subdivision (b) and Government Code section 970.6.
The Government Code establishes the general procedures for the payment of claims for money or damages against local public entities. (Gov. Code, §§ 970-971.2.) Specifically, Government Code section 970.6 provides for spreading payments over a 10-year period:
"(a) The court which enters the judgment shall order that the governing body pay the judgment, with interest thereon, in not exceeding 10 equal annual installments if both of the following conditions are satisfied:
"(1) The governing body of the local public entity has adopted an ordinance or resolution finding that an unreasonable hardship will result unless the judgment is paid in installments.
"(2) The court, after hearing, has found that payment of the judgment in installments as ordered by the court is necessary to avoid an unreasonable hardship.
"(b) Each installment payment shall be of an equal amount, consisting of a portion of the principal of the judgment and the unpaid interest on the judgment to the date of the payment. The local public entity, in its discretion, may prepay any one or more installments or any part of an installment."
Prior to the 1980 amendments, these sections applied only to actions founded on tort or inverse condemnation liability, and specifically did not include eminent domain judgments. (12 Cal. Law Revision Com. Rep. (Sept. 1974) p. 575.) By the 1980 amendments, "Judgment" as defined in Government Code section 970, was expanded to include all money judgments. (15 Cal. Law Revision Com. Rep. (Nov. 1979) p. 1257.) In the eminent domain law, section 1268.020 was also amended to make clear that an eminent domain judgment may be enforced against a local public entity under Government Code sections 970-971.2. That remedy was added to section 1268.020 to address the situation where the Agency does not pay in full but the condemnee does not choose to get the property back. Section 1268.020, as last amended in 1980, now reads:
"(a) If the plaintiff fails to pay the full amount required by the judgment within the time specified in Section 1268.010, the defendant may:
*629 "(1) If the plaintiff is a public entity, enforce the judgment as provided in Division 3.6 (commencing with Section 810) of Title I of the Government Code.
".... .... .... .... .... .... ....
"(b) Upon noticed motion of the defendant, the court shall enter judgment dismissing the eminent domain proceeding if all of the following are established:
"(1) The plaintiff failed to pay the full amount required by the judgment within the time specified in Section 1268.010.
"(2) The defendant has filed in court and served upon the plaintiff, by registered or certified mail, a written notice of the plaintiff's failure to pay the full amount required by the judgment within the time specified in Section 1268.010.
"(3) The plaintiff has failed for 20 days after service of the notice under paragraph (2) to pay the full amount required by the judgment in the manner provided in subdivision (b) of Section 1268.010.
"(c) The defendant may elect to exercise the remedy provided by subdivision (b) without attempting to use the remedy provided by subdivision (a)." (§ 1268.020, italics added.)
The legislative history also makes it clear that it is the defendant's election which governs how the action is to proceed: "[T]he defendant may enforce the plaintiff's obligation to pay by execution or, at the defendant's election, may obtain a dismissal of the proceeding with its attendant award of litigation expenses.... Under former Section 1252, these remedies were provided, but the section required that the defendant resort first to execution and, if unsuccessful, he could have the proceeding dismissed. However, former Section 1255a, a later enactment, provided that failure to pay the judgment within the required time constituted an implied abandonment of the proceeding. The two sections were construed together to give the defendant the option of resorting to execution or to having the proceeding dismissed as impliedly abandoned." (Cal. Law Revision Com. com., 19A West's Ann. Code Civ. Proc. (1982 ed.) § 1268.020, p. 121, italics added.)

The standard of appellate review.
The trial court's order permitting the Agency to pay the balance of the judgment over 10 years is appealable as an order after judgment under *630 section 904.1, subdivision (a)(2). Review by this court is de novo. (1) Appellate courts may independently determine the proper interpretation of a statute; they are not bound by evidence presented in the trial court or by the trial court's interpretation. (California Teachers Assn. v. San Diego Community College Dist. (1981) 28 Cal.3d 692, 699 [170 Cal. Rptr. 817, 621 P.2d 856].) Likewise, application of the interpreted statute to undisputed facts is subject to independent appellate determination. (International Engine Parts, Inc. v. Feddersen & Co. (1995) 9 Cal.4th 606, 611 [38 Cal. Rptr.2d 150, 888 P.2d 1279].)

Basic interpretational rules.
A number of rules are applicable to help interpret the statutes and how they apply in this situation.
(2) To the extent two statutory provisions conflict, specific statutes govern general statutes. (San Francisco Taxpayers Assn. v. Board of Supervisors (1992) 2 Cal.4th 571, 577 [7 Cal. Rptr.2d 245, 828 P.2d 147].) In addition, two statutes dealing with the same subject matter are given concurrent effect if they can be harmonized, even though one is specific and the other is general. (People v. Price (1991) 1 Cal.4th 324, 385 [3 Cal. Rptr.2d 106, 821 P.2d 610].)
(3) Whenever possible, courts will construe a statute to preserve its constitutionality. (Bradshaw v. Park (1994) 29 Cal. App.4th 1267, 1277 [34 Cal. Rptr.2d 872].) Constitutional issues will be resolved only if absolutely necessary and not if the case can be decided on any other ground. (Palermo v. Stockton Theatres, Inc. (1948) 32 Cal.2d 53, 65 [195 P.2d 1].) However, appellate courts have discretion to determine unnecessary issues of great importance to the parties which may serve to avoid future litigation when the issue presented is one of continuing public interest and is likely to recur. (Filipino Accountants' Assn. v. State Bd. of Accountancy (1984) 155 Cal. App.3d 1023, 1030 [204 Cal. Rptr. 913].)

Section 1268.020 is very specific: If the condemner does not pay the full amount, the condemnee gets to choose whether to proceed under the Government Code or get the property back.
(4) In 1980, at the time the Legislature amended Government Code section 970 to cover all judgments, it also amended the eminent domain law, Code of Civil Procedure section 1268.020, to make it clear that the Government Code provisions would be applicable to eminent domain judgments. But it specifically made the Government Code applicable to eminent domain *631 judgments within the confines of section 1268.020, which has three parts. Subdivision (a) states that the defendant "may" proceed pursuant to the provisions of the Government Code. Subdivision (b), however, gives the defendant condemnee the option to repossess the property provided certain prerequisites for notice, etc., were met. Subdivision (c) states that the defendant may elect to exercise the remedy provided by subdivision (b) without attempting to use the remedy provided by subdivision (a). The express statutory language, therefore, specifically gives the choice of which procedures to use to the defendant and does not require the defendant to first seek Government Code remedies before seeking the return of its property.
In the trial court, Agency ignored the condemnee's options under section 1268.020. It argued that under Government Code section 970.6 the court "shall" order that the judgment be paid in installments if the agency has adopted a resolution of unreasonable hardship and the court, after hearing, has found that installment payments are necessary to avoid such hardship. Agency argued that the trial court had the discretion to follow Government Code section 970.6 and entirely disregard section 1268.020.
In contrast, Force contends that to harmonize the Government Code provision with the eminent domain law, the court must find that Government Code section 970.6 applies to an eminent domain judgment only when the condemnee does not seek to repossess its property. Here Force clearly chose to get its property back.
Force further contends that to hold that Government Code section 970.6 controls, irrespective of how the condemnee chooses to proceed, would have three consequences: (1) it would give effect to a general statute (the Government Code) over the specific (the eminent domain law), contrary to the well-accepted rules of statutory interpretation; (2) it would render meaningless section 1268.020 provisions which clearly and specifically give the choice of how to proceed to the defendant; and (3) it would render Government Code section 970.6 unconstitutional as applied to eminent domain judgments because giving the condemnee the option of getting the property back is what "saves" the constitutionality of Government Code section 970.6 as applied to eminent domain.
Agency successfully made what amounted to an equitable argument in the trial court, contending that it had paid as much of the judgment as it could, and that, in the interest of fairness to Agency, the remaining amounts should be spread out over time. From reading the hearing transcript it is easy to tell that this was the argument that the trial court found persuasive. Looking *632 ahead to appellate review of his order, the trial judge previewed his argument for this court: "I think that any appellate court that would impose otherwise in these days of economic hardship on governmental agencies would be doing a disservice to the government in general to not have some flexibility on the equities as we find in this case."
The approach of the trial court is well intentioned but we find it to be directly contrary to the express language of the statute. The property owner is entitled to be paid the full amount for its property within 30 days after final judgment. The purpose of this requirement is obviously to make the government meet its constitutional obligation to pay just compensation when it has condemned private property. If the government does not have the money for acquiring the property, its option is to abandon the condemnation. (§ 1268.510; Los Angeles Unified School Dist. v. Trump Wilshire Associates (1996) 42 Cal. App.4th 1682 [50 Cal. Rptr.2d 229].) If the government refuses to abandon, the property owner may effectively force an implied abandonment by using the procedure spelled out in section 1268.020, subdivision (b).
Agency's "equitable" argument is analogous to having someone purchase your house for cash and, after closing of escrow, tell you that you will only be getting 80 percent in cash; the rest will be on a 10-year note from an insolvent buyer. In the opinion of Julia James, Agency's own finance director, Agency was "insolvent." In the hypothetical, the seller took some risk by putting his house on the market. Here, Force was compelled to sell its property to Agency under eminent domain law.
Force, which had no part in creating Agency's financial condition simply seeks the return of its property. Under the law, Force is entitled to this remedy.
We hold that the trial court had no discretion to weigh the respective hardships on the parties and the court committed error in so doing.

The condemnee's choice in section 1268.020 "saves" the constitutionality of Government Code section 970.6 as applied to eminent domain judgments.
(5a) But for the defendant's option in section 1268.020 to choose to repossess its property, allowing the government to pay an eminent domain judgment in installments would be unconstitutional. It is only the fact that the condemnee has the choice to proceed under the Government Code or to repossess the property that save the constitutionality of Government Code section 970.6 procedure as applied to an eminent domain judgment.
*633 (6) The California Supreme Court, relying on United States Supreme Court authority, has been very clear that "`[t]he just compensation to which the owner is constitutionally entitled is the full and perfect equivalent of the property taken. [Citation.]' This `means substantially that the owner shall be put in as good position pecuniarily as he would have been if his property had not been taken. [Citation.]' [¶] Therefore, if the government pays for condemned property only after taking and using it, the owners `are entitled to have the full equivalent of the value of [its] use at the time of the taking paid contemporaneously with the taking.'" (Redevelopment Agency v. Gilmore (1985) 38 Cal.3d 790, 796-797 [214 Cal. Rptr. 904, 700 P.2d 794], italics in original.)
At least since Gilmore it has been the law in California that state statutory provisions must fail if they conflict with this constitutional requirement: "This element of `just compensation' is constitutionally required and `cannot be made to depend upon state statutory provisions.'" (38 Cal.3d at p. 797.)
Gilmore considered whether interest payment from the time the government takes possession under California's early take provisions until the judgment in the case must be calculated at the market rate of interest, or whether the statutory legal rate of interest set by the eminent domain law would suffice. At the time the court decided Gilmore, the market rate of interest was significantly higher than the statutory rate. The court found that while interest could be a reasonable and fair reimbursement for a deferred payment while the case is pending, interest payment at the market rate was constitutionally compelled irrespective of what the statute required. There is nothing in Gilmore, however, that would allow a deferment of an eminent domain judgment for 10 years after the case is concluded. Indeed, the underlying rationale of Gilmore requires the opposite result.
By way of illustration, imagine a home condemned for a freeway. The state takes possession. A jury verdict is eventually returned that is higher than the state's estimate of value. The state reacts by maintaining that payment will be a hardship. Therefore the state will pay the verdict over 10 years. In the meantime, the condemnee is out of his property and becomes an involuntary lender to the state for 10 years. Can this be the "full and perfect" equivalent of the property taken? We think not.
In fact, Gilmore is explicit on this point: "... the Eminent Domain Law was not intended to make condemnees the unwilling financiers of public acquisitions." (38 Cal.3d at p. 805.) While it might be permissible to "finance" a portion of the award by the payment of market interest while a *634 valuation dispute is being resolved, it certainly is not acceptable to force the condemnee to finance any of the award after the compensation has been determined. Furthermore, Gilmore specifically recognizes the condemnee's option of repossessing the property and distinguishes the prejudgment interest situation from the postjudgment circumstance we have in this case: "... an unpaid condemnee has something akin to a security interest in the condemned property. If a final award remains unpaid after 30 days, the condemnee may obtain a dismissal of the proceedings and repossess the property. (§§ 1268.010, subd. (a), 1268.020, subd. (b).)" (Id. at p. 805, fn. 15.)
(5b) In our case, the trial court has made Force into an involuntary lender to Agency for the balance of the judgment, which is directly contrary to the Supreme Court's directive in Gilmore.
Moreover, the very reason why the trial court has done so makes this method of compensation even less "just." Allowing a solvent condemner to extend the payments over 10 years would be one thing  albeit unconstitutional  but at least the condemnee would have some assurance of eventually receiving payment. Under Government Code section 970.6, however, the agency can only move and the court can only grant an installment payment plan if it finds that the agency is essentially unable to pay the award. In granting a Government Code section 970.6 motion, the court has not only made the condemnee into an involuntary lender in contravention of the constitutional guarantee of just compensation, but it has also made the condemnee into an involuntary lender to an insolvent agency. We find that this cannot be "full and perfect" equivalent of the property.
Indeed, the evidence presented to the trial court on this motion confirms Agency's insolvency. The deposition of Agency's finance director, Julia James, who testified, reveals:
"Q. Ms. James, what is the financial picture of the community redevelopment agency?
"A. Very bleak. The Agency is as bad off financially as any  any organization could be. Any organization that I've ever seen. It is  it is and has been working in a deficit position for many, many years, and I don't foresee that situation changing any time in the near future ...
"Q. So this isn't just sort of a blip on the screen that's going to be corrected in a few months or a few years or something like that?
"A. Definitely not."
*635 Specifically, with respect to Force, Ms. James testified:
"Q. Do you believe that there is any circumstances in which the Agency could pay the Force judgment in fiscal year ending in '95?
"A. No."
Finally, Ms. James concluded:
"Q. In your opinion is the Agency insolvent?
"[Objection; relevance. But you may answer.]
"A. Yes, in my opinion it is.
"Q. What are your thoughts as to whether or not the Agency will be filing bankruptcy?
"A. I don't know. As counsel said, I'm not on the Agency board. They have the ultimate decision. I don't believe that they wish to do so.
"Q. Do you think they will be forced to do so?
"[Objection; relevance; calls for speculation. You may answer.]
"A. I think they could very well be forced to."
There is no question that the Agency was in dire financial straits. But making Force an involuntary unsecured lender to an insolvent agency in no way meets the mandates of Gilmore. To the extent the Legislature has allowed a financially destitute condemner to defer payment of an eminent domain judgment, as Agency contends, under Government Code section 970.6, as applied to this case, is unconstitutional.
Fortunately, we do not believe that is what the Legislature has done. In section 1268.020, the Legislature has given the condemnee the choice of how to proceed. It can accept the procedure under the Government Code, thereby voluntarily agreeing to something less than just compensation, or it can have the property back. As long as the trial court honored the condemnee's rights in this regard, there would be no constitutional violation. The two statutory provisions can be harmonized and their constitutionality preserved. But in this case, once the trial court ignored the condemnee's choice under section 1268.020, both the statute and the Constitution were violated.

*636 DISPOSITION
The judgment is reversed and remanded for further proceedings consistent with the holdings herein. Appellant to recover costs of this appeal.
Lillie, P.J., and Johnson, J., concurred.
NOTES
[1] This case has been before this court previously. We filed an unpublished opinion in Community Redevelopment Agency v. Force Electronics (Nov. 23, 1994) case No. B073007. Much of the background information in this current opinion is taken from that case.
[2] All statutory references are to California Code of Civil Procedure unless otherwise indicated.
[3] The issues raised by Dai Ichi and Ticor as well as Agency in opposition to Force's motion to dismiss were not considered by the trial court and are therefore not before this court on this appeal. For information purposes only those issues include the legal effect of subsequent grantees taking title subject to the lis pendens filed and recorded in these proceedings.