[Nos. A104946, A105134. First Dist., Div. One. Feb. 24, 2005.]

TERRELL JOSEPH et al., Plaintiffs and Respondents, v.
SAN FRANCISCO HOUSING AUTHORITY, Defendant and Appellant.

COUNSEL

Nossaman, Guthner, Knox & Elliot, John T. Hansen; Goldberg, Stinnett, Meyers & Davis, Terrance L. Stinnett, Merle C. Meyers and Miriam Khatiblou for Defendant and Appellant.

Law Offices of Thomas J. Brandi, Thomas J. Brandi and Terrance D. Edwards for Plaintiffs and Respondents.

OPINION

**STEIN, Acting P. J.**—On December 13, 1997, a fire broke out at a housing development owned and operated by the San Francisco Housing Authority (SFHA), resulting in the deaths of one adult and four children. A jury later found SFHA liable for the deaths and awarded surviving family members $12 million. On June 22, 2001, judgment against SFHA was entered in that amount, plus costs and prejudgment interest. SFHA later brought suit against its insurance company for failing to settle plaintiffs' case within the coverage limits. SFHA ultimately settled that suit for $3 million, an amount that was reduced to $2,748,861.24 when SFHA used some of the funds to reimburse the expenses, including attorney fees, it incurred in litigating that lawsuit and related matters.

SFHA did not pay plaintiffs, and plaintiffs, on August 5, 2003, filed a petition for writ of mandate in the superior court to compel SFHA to satisfy the judgment. SFHA opposed the writ, claiming, in essence, that it did not have the funds to satisfy the judgment, and had neither the legal obligation nor the power to raise funds for that purpose. According to SFHA, the only money available to it that could be used to satisfy the judgment was the money received in its settlement with its insurer (less the reimbursed expenses). SFHA claimed, further, that there were other litigation creditors who claimed an interest in those funds, and complained that plaintiffs had demonstrated no willingness to negotiate a plan for the equitable distribution of the funds between creditors.[1]

The superior court, rejecting SFHA's claims, granted the petition for writ of mandate and issued an order directing SFHA to satisfy the full amount of the judgment against it no later than 60 days from the date of the order. The court later denied SFHA's motion for reconsideration, but amended the order to require SFHA to provide an accounting of the settlement proceeds within 10 days, and to pay plaintiffs all remaining settlement proceeds within 10

---

[1] On January 5, 2004, SFHA paid plaintiffs $2,748,861.24—the funds remaining from the settlement agreement with SFHA's insurer.

days after the accounting was provided. In addition, the court ordered SFHA to satisfy the $12 million judgment in full, ordering SFHA to "pay the judgment if funds are available, and if unavailable [to take] proper steps . . . to appropriate the amount required to meet that obligation." The court ordered the parties to meet with the court to schedule mediation for the purposes of working out a payment plan.

SFHA appeals from the orders granting the writ of mandate and denying its motion for reconsideration, claiming that it demonstrated it had no funds available to satisfy the judgment and that it would be unable to obtain funds to satisfy the judgment. In other words, according to SFHA, the writ of mandate was improperly issued as a "futile act."

## STANDARD OF REVIEW

■ The trial court's ruling was based both on its finding and interpretation of the facts and on its interpretation of the relevant statutes, regulations and rules. We defer to its factual determinations if supported by substantial evidence, but conduct a de novo review of the meaning and application of the statutes, regulations and rules. (See *Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916 [129 Cal.Rptr.2d 811, 62 P.3d 54].)

## DISCUSSION

The San Francisco Board of Supervisors established SFHA in 1938. It is a local public agency, and, as it concedes, the enforcement of judgments against it therefore is governed by Government Code section 970 et seq.[2]

Section 970.2 provides: "A local public entity shall pay any judgment in the manner provided in this article. A writ of mandate is an appropriate remedy to compel a local public entity to perform any act required by this article." Section 970.4 provides: "Except as provided in Section 970.6, the governing body of a local public entity shall pay, to the extent funds are available in the fiscal year in which it becomes final, any judgment, with interest thereon, out of any funds to the credit of the local public entity that are: [¶] (a) Unappropriated for any other purpose unless the use of such funds is restricted by law or contract to other purposes; or [¶] (b) Appropriated for the current fiscal year for the payment of judgments and not previously encumbered."

Section 970.5 provides that "if a local public entity does not pay a judgment, with interest thereon, during the fiscal year in which it becomes

---

[2] Further statutory references are to the Government Code unless otherwise noted.

final, the governing body shall pay the judgment, with interest thereon, during the ensuing fiscal year immediately upon the obtaining of sufficient funds for that purpose." Section 970.8, subdivision (a) provides that "[e]ach local public entity shall in each fiscal year include in its budget a provision to provide funds in an amount sufficient to pay all judgments in accordance with this article."

■ In sum, the Government Code expressly and specifically requires a local public entity to pay the full amount of any judgment, with interest. The entity is required to pay the judgment out of any unrestricted funds it has for the fiscal year in which the judgment was entered, and if any amount remains unpaid, is required to obtain funds and pay that amount the following fiscal year. The only exception is that the entity can in some cases obtain a court order allowing it to pay the judgment, with interest, in annual installments for a period up to 10 years. (§ 970.6.)

■ Contrary to SFHA's arguments, the court's order simply follows the procedure set forth by the Government Code. SFHA may or may not have funds available at the present time, but that means only that it has an excuse for not paying the full amount of the judgment during the current fiscal year. Section 970.8 requires it to obtain funds for the judgment in the following year, and section 970.5 requires it to pay the judgment with those funds as soon as they are obtained. (See *Tevis v. City & County of San Francisco* (1954) 43 Cal.2d 190, 200 [272 P.2d 757], recognizing that a writ of mandate is properly issued to direct city officials to pay claims on the presumption that the claims will be paid if funds are available, and if unavailable, that the proper steps will be taken to appropriate the amount required to pay them. Also see *Lynch v. San Francisco Housing Authority* (1997) 55 Cal.App.4th 527, 539 [65 Cal.Rptr.2d 620], recognizing that the SFHA is legally liable for judgments entered against it.)

SFHA asserts that, aside from the settlement proceeds, the bulk of its funds and property are received either from the United States government, particularly the United States Department of Housing and Urban Development (HUD), or from discounted rents paid by residents of developments funded by the United States. It claims a primary mission of providing safe, sanitary, affordable and decent housing to low-income and needy persons, and complains that any use of the funds it receives to pay plaintiffs' judgment will interfere with that mission. In any event, SFHA contends that it is prohibited from using the property and funds it administers to pay the judgment, pointing out that HUD retains an interest in the funds and property, with the result that SFHA's use of them is restricted by law. (24 C.F.R. §§ 85.31(b), 85.32(c), (d) & (e), 982.152(a)(3), 982.155(a) & (b)(1) (2004).)

SFHA concedes that the contract between HUD and the SFHA (the Consolidated Annual Contributions Contract between Housing Authority and the United States of America Government (ACC)) does not prohibit SFHA from paying the judgment. It maintains, however, that such a prohibition exists in Office of Management and Budget, Circular No. A-87, revised (the Circular).

The Circular is a 1997 publication distributed by the Office of Management and Budget (OMB) for the purpose of establishing principles for determining allowable costs incurred by state, local and federally recognized Indian tribal governments under grants, cost reimbursement contracts and other agreements with the federal government. It addresses certain specified costs as being allowable or not allowable. Attachment B, section 20, of the Circular, on which SFHA relies, is entitled "Fines and penalties," and provides: "Fines, penalties, damages, and other settlements resulting from violations (or alleged violations) of, or failure of the governmental unit to comply with, Federal, State, local, or Indian tribal laws and regulations are unallowable except when incurred as a result of compliance with specific provisions of the Federal award or written instructions by the awarding agency authorizing in advance [of] such payments." Although the conditions that contributed to the fire in this case may have been violations of local laws and regulations, SFHA's obligation to plaintiffs is based on a judgment, and is not premised on violations of law and regulations. Payment of this award of damages is not, therefore, made unallowable by Attachment B, section 20.

Nothing in the Circular makes "unallowable" any cost not specifically addressed by the Circular. To the contrary, the introductory paragraph to Attachment B explains, "Failure to mention a particular item of cost in these sections is not intended to imply that it is either allowable or unallowable; rather, determination of allowability in each case should be based on the treatment or standards provided for similar or related items of cost." Although the Circular is silent as to civil judgments such as that at issue here, several provisions suggest that the cost of paying damages awards is allowable. For example, subdivisions (c) through (g) of section 25 contemplate contributions to self-insurance programs, and in providing indemnification for costs of "securing the governmental unit against liabilities to third persons and other losses not compensated by insurance or otherwise" (subd. (g), seem to recognize and provide for liability to third parties such as plaintiffs here.[3]

---

[3] Attachment B contains other provisions suggesting that damages for civil liability from suits such as plaintiffs' action would be an allowable cost. It makes unallowable costs incurred in defense of any civil or criminal fraud proceeding where the contractor has admitted, or has been adjudged to have committed, fraud (Attachment B, § 14(a)(1), or where the costs were incurred by the contractor as a result of proceedings commenced by the United States or a State (Attachment B, § 14(a)(2)). Legal expenses required in the administration of federal

Similarly, section 13 of the ACC requires SFHA to procure insurance, including commercial property and commercial general liability insurance.

Finally, SFHA's position is contrary to that expressed in a letter from HUD's general counsel, sent in response to a letter from SFHA, outlining SFHA's understanding that it could not use the funds or property it had on hand, and also could not seek funds from HUD, to satisfy the judgment. Robert S. Kenison, associate general counsel with HUD, responded that, with approval from the Office of Public and Indian Housing (PIH), SFHA would be entitled to satisfy the judgment out of subsidy funds provided by HUD, or from revenues generated by selling or encumbrancing property used for public housing projects.[4]

SFHA argues that, despite the explanations from HUD's associate general counsel, and the absence of any language either in its contract with HUD or

programs are allowable. Legal expenses for the prosecution of claims against the federal government are unallowable (Attachment B, § 14(b)). Section 20, as noted, makes costs and damages resulting from the failure to comply with laws unallowable. Section 25, subdivisions (a) and (b)(1), makes allowable costs of insurance for "coverage . . . in accordance with the governmental unit's policy and sound business practice." In sum, Attachment B appears to distinguish between damages or penalties resulting from some kind of intentional wrongful conduct—which are unallowable—and damages resulting from other kinds of conduct—which are allowable. There is no suggestion here that SFHA's liability to plaintiffs is based on intentional misconduct.

[4] Mr. Kenison wrote on September 15, 2003:

"Thank you for your September 5, 2003, letter to General Counsel Richard A. Hauser concerning the writ of mandate in Emanuel Evans, et al. v. San Francisco Housing Authority, et al.

"You state that the San Francisco Housing Authority (SFHA) intends to use its best efforts to raise the funds necessary to satisfy the $12,000,000 judgment from any available outside sources. Our response here relates only to recourse to property in which HUD has an interest. First, use of operating subsidy funds provided by HUD to SFHA HUD could be an available resource. The provisions of OMB Circular A-87 cited at page 3 of your Opposition Brief expressly provide that damages may be paid from the Federal grant when there are 'written instructions by the awarding agency authorized in advance of such payment.' The use of such funds for liability incurred in the operation of a HUD-assisted public housing project is not uncommon and would not be precedential. Should you need to use such a resource, written approval should be sought from the Office of Public and Indian Housing (PIH).

"As for real property, we defer to you as to what constitutes 'available funds' within § 970.4 of the California Code. However, I would not go so far as to say that real property, such as public housing projects, 'purchased using Federal dollars remain the property of the Federal government' (page 7, Opposition Brief). Nevertheless, these projects are subject to a Declaration of Trust in favor of the United States that they be used for the purposes prescribed under the United States Housing Act of 1937 and any approval of a security interest in them must be approved by HUD. Further, disposition of such property requires HUD approval under the provisions of section 18 of that Act and 24 CFR Part 970. An application for HUD approval of disposition would have to be submitted to PIH's Special Applications Center (SAC) as specified in Notice PIH 2003-9. Any such approval of the disposition of occupied units would generally have a higher threshold to satisfy the statutory bases for disposition under section 18.

"Please let me know if we can be of further assistance in this matter."

in the Circular specifically prohibiting the use of HUD property and funds to satisfy judgments, a "long and well established line of reported federal case law" supports its position. It cites cases such as *Buchanan v. Alexander* (1846) 45 U.S. (4 How.) 20, 20–21 [11 L.Ed. 857] (federal funds held by a purser to be paid as seamen's wages cannot be attached by their creditors); *Palmiter v. Action, Inc.* (7th Cir. 1984) 733 F.2d 1244, 1248 (judgment creditor not entitled to garnish funds granted to Head Start program); *Neukirchen v. Wood County Head Start, Inc.* (7th Cir. 1995) 53 F.3d 809, 814 (property purchased with federal grant not subject to attachment); *Fernandez v. Huerfano and Las Animas Counties Head Start Policy Council, Inc.* (D.Colo. Aug. 14, 1990, Civ. A. No. 90-A-540) 1990 WL 126195, *2 (federal monies appropriated for specific purposes are not subject to garnishment until those purposes are accomplished); *U. S. Dept. of Housing and Urban Development v. K. Capolino Construction Corp.* (S.D.N.Y, May 7, 2001, No. 01 Civ. 390 (JGK)) 2001 WL 487436, *4 (housing authority bank accounts not subject to attachment or garnishment where HUD has established an interest in the funds).

These cases simply recognize that federally owned funds and property may not be attached to satisfy a judgment, and are of no aid to SFHA. The writ at issue here does not attempt to attach any property. It directs SFHA to pay the judgment with funds available for that purpose, and if insufficient funds are available, to appropriate or otherwise obtain funds for that purpose.

We conclude that nothing in its contract with HUD, in the Circular or in the applicable regulations, prevents SFHA from using HUD grants or properties, or rents obtained from the properties, to pay the judgment. SFHA may have to seek approval from HUD or PIH for that use, but that fact does not render the funds or properties unavailable.

SFHA next claims that it has tried to obtain the funds and/or approval from HUD, but has been unsuccessful, apparently arguing that it follows that the funds and approval are not, and never will be, available. This claim is based in part on a letter from the director of HUD's Office of Public Housing, explaining that funds were not available for the purpose of paying the judgment. The letter states the director's understanding that SFHA had been ordered to pay the judgment in full within 60 days. She writes: "HUD regrets to inform you that the Department does not have funding available to pay for matters such as this. The U.S. Congress provides HUD's funding annually and funds are carefully allocated for specific programs and purposes." The director's letter does not state that HUD never will be able to provide the funds, and certainly does not state that the funds are not an allowable cost. The Director wrote only that the funds provided to HUD for that year had been earmarked for other purposes. Moreover, even if this letter could be

construed as an outright refusal to provide funding, nothing about it mandates the conclusion that SFHA will be unable to raise the funds some other way, such as by using a portion of its operating subsidy or selling or encumbering its real property.

We also are not persuaded that SFHA demonstrated an inability to raise the funds by the declaration of Gregg Fortner, SFHA's executive director, that no one had agreed or offered to provide funds to pay the judgment, despite the fact that Fortner conducted a conference call with HUD officials, met informally with the assistant secretary of Public and Indian Housing and met on several occasions with the regional counsel for HUD and with counsel within the United States Attorney's Office in San Francisco, about the matter. A failure to make an offer is not the same thing as a refusal. In any event, at the most, SFHA showed that no funds were available from HUD in 2003, when all these letters and meetings took place. It has not shown that it will be unable to obtain the necessary funds in the future.

Finally, the record does not require the conclusion that SFHA's funding sources are confined to the funds it receives from HUD. For example, Mr. Kenison, the associate general counsel for HUD, suggested that HUD may not have an interest in all funds and properties held by local housing authorities, limiting his comments on remedies available to SFHA, "to property in which HUD has an interest." SFHA receives funds from San Francisco, and although it asserts that its informal discussions with the city have focused on how SFHA can help San Francisco reduce the city's budget, it does not necessarily follow that it will be unable to obtain funds from San Francisco to pay at least a portion of the judgment.

■ In addition, as SFHA concedes, it has an independent power to raise revenues by issuing bonds and making or selling mortgage loans. (Health & Saf. Code, §§ 34312.3, subd. (a) & 34350, subds. (a), (b) & (f); *Lynch v. San Francisco Housing Authority, supra*, 55 Cal.App.4th at p. 540.) SFHA does not read these provisions as allowing it to raise funds for the purpose of compensating victims for its negligence, and argues that HUD restricts its ability to use other funds to repay the bonds. ■ Health and Safety Code section 34350, subdivision (a), however, grants SFHA the power to issue bonds "for any of its corporate purposes." While SFHA apparently views its "corporate purposes" as being confined to providing housing to underprivileged persons, we are not persuaded that paying damages for the negligent management of property serves no valid corporate purpose. Finally, for the reasons we already have stated, we are not persuaded that HUD will refuse to allow SFHA to repay any bond liability out of HUD funds and properties.

CONCLUSION

A writ of mandate is properly issued to compel a public entity, such as SFHA, to pay a judgment entered against it, and SFHA has not shown that the writ issued here is a futile act.

The orders issuing the writ of mandate and denying SFHA's motion for reconsideration are affirmed.

Swager, J., and Margulies, J., concurred.

A petition for a rehearing was denied March 28, 2005, and appellant's petition for review by the Supreme Court was denied May 18, 2005.