Filed 11/29/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SUTTER HEALTH et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>EDEN TOWNSHIP HEALTHCARE DISTRICT,<br><br>     Defendant and Respondent. | A146002<br><br>(Alameda County<br>Super. Ct. No. RG09-481573) |

Appellant Sutter Health (Sutter) obtained a sizable judgment against respondent Eden Township Healthcare District (District). More than a year after the judgment was entered, the District filed a motion under Government Code section 970.6,[1] which permits a local public entity to pay a judgment in up to 10 annual installments upon a showing that prompt payment would impose an "unreasonable hardship." In addition, the District sought to change the rate of postjudgment interest established by the judgment to the interest rate specified by section 984, subdivision (e)(2), which applies to judgments paid by "periodic payment." In support of its claim of hardship, the District's motion demonstrated that it lacked sufficient funds to pay the judgment, was unable to borrow additional money against its already encumbered assets, and might be forced into bankruptcy if required to sell assets to raise the funds necessary for a lump sum payment.

The trial court granted the motion. In addition to permitting the District to pay the judgment in 10 annual installments, the court's order effectively amended the judgment

---

[1] Unless indicated otherwise, all further statutory references are to the Government Code.

nunc pro tunc to impose the postjudgment interest rate specified in section 984 from the date the judgment was entered.

We affirm the trial court's grant of installment payment relief under section 970.6, concluding that the District's financial straits readily support a finding of "unreasonable hardship." While we conclude that the postjudgment interest rate established by section 984 is appropriate prospectively, we find no statutory basis for reducing the interest accrued prior to the trial court's grant of relief under section 970.6. We therefore reverse the retroactive portion of the trial court's order and remand for entry of an amended judgment consistent with our decision.

## BACKGROUND

The District is a public agency established pursuant to the Local Health Care District Law (Health & Saf. Code, § 32000 et seq.) to furnish hospital and other health care services. (*Eden Township Healthcare Dist. v. Sutter Health* (2011) 202 Cal.App.4th 208, 213 (*Eden I*).) In this litigation, the merits of which are not pertinent to the issues on appeal, the District suffered a money judgment in favor of Sutter of $17 million, plus an additional $2.5 million in prejudgment interest, attorney fees, and costs.[2]

More than a year after entry of the nearly $20 million judgment, the District moved for an order (1) permitting the District to pay the judgment in 10 annual installments under section 970.6 and (2) declaring that the postjudgment interest rate to be paid on the judgment will be the same as the interest rate on "one-year United States Treasury bills" in each year. (§ 984, subd. (e)(2).) The motion was supported by a declaration from Dev Mahadevan, the chief executive officer of the District. Mahadevan described various activities of the District, which include maintaining an endowment to

_____

[2] A portion of the background of the litigation is described in our decisions in *Eden I*, *supra*, 202 Cal.App.4th at pages 214 to 218, and *Eden Township Healthcare District v. Eden Medical Center* (2013) 220 Cal.App.4th 418, 421–424. Following the litigation described in *Eden I*, the parties engaged in a second arbitration with respect to damages accruing from the District's breach of contract. The judgment was the result of that second arbitration.

assist local organizations in providing health care to the disadvantaged, subsidizing the expenses of hospitals with financial problems, and operating three community medical offices (offices) in San Leandro, Castro Valley, and Dublin. The offices, owned by the District, are valued at approximately $69 million, encumbered by $45 million in debt. Rent and other income from the offices is the District's primary source of revenue. Of the three locations, by far the bulk of the District's income, 80 percent, is derived from the Dublin office complex. The District is required by its loan agreements to maintain a balance of at least $8 million in "unencumbered liquid assets." At the time of the declaration, it possessed $4.5 million in liquid assets above the required minimum.

To satisfy the judgment in one lump sum, Mahadevan believed, the District would be required to sell property. As a practical matter, this would require sale of the Dublin offices, since the Castro Valley and San Leandro offices have little value in excess of their encumbrances. Yet sale of the Dublin offices would "deprive the District of the majority of its revenue stream crucial to fulfilling its mission and would grossly undermine its ability to provide valuable healthcare services to the community." Mahadevan stated he had "explored options to satisfy the Judgment, including borrowing against other assets," but he had concluded that "the District simply does not have the equity to obtain [the] additional financing needed." "If the District is unable to satisfy the judgment through a periodic payment plan," Mahadevan threatened, "it will likely commence the process to file a Chapter 9 bankruptcy petition." The District's board of directors had adopted a resolution finding insufficient funds to satisfy the judgment and an unreasonable hardship if installment payments were denied.

Mahadevan's views were confirmed in a declaration submitted by an accountant who had performed "an independent analysis" of the District's finances. The accountant stated that the District was required by a loan agreement to retain a minimum of $8 million in liquid assets. In addition to that amount, the District possessed approximately $4.5 million. He believed that an entity such as the District must retain liquid assets sufficient to cover its expenses for a reasonable period of time, from six months to a year, or a minimum for the District of approximately $4 million. The District

therefore lacked the funds to make a lump sum payment to satisfy the judgment. Further, the District's income consisted primarily of rental income from offices in the buildings it owned. Without the revenue stream from the offices, "there would be considerable doubt that the District could continue as a going concern." Based on his analysis of the District's projected income and expenses, the accountant concluded that it would require 10 years to pay the judgment "without significantly impacting [the District's] ability to continue to service its residents."

Sutter opposed the motion. In support of its opposition, Sutter submitted the declaration of Stephen Goff, one of Sutter's attorneys in this litigation, who stated that, beginning in 2008, he had "periodically reviewed the District's published financial information." Goff characterized the offices operated by the District as "investment properties." He explained that the Dublin property consisted of three parcels, two of which held offices and the third as yet undeveloped. One of the lessees of the offices had been granted an option to purchase one parcel and a right of first refusal as to the entire property. Goff reviewed the District's grants to community medical service providers, finding that the grants had fallen considerably from between $1 to $3 million annually in the period 2008–2010, to less than $200,000 annually in the years since. He noted that virtually all of the District's income is now used to pay its own administrative expenses and the operating expenses of the offices.

In an order entered on June 17, 2015, the trial court summarily granted the District's motion, authorizing it to pay the judgment in equal annual installments over 10 years, beginning June 30, 2015, and setting the interest rate consistent with section 984, subd. (e)(2), beginning from the date of entry of the judgment.

## DISCUSSION

Sutter appeals the trial court's order, arguing the court erred in finding "unreasonable hardship" justifying installment payments under section 970.6 and, alternatively, in permitting payment over 10 years, rather than over a shorter period. In addition, Sutter contends the trial court erred in imposing the rate of interest established

4

by section 984, subdivision (e)(2), both retroactively, from the date of entry of judgment, and prospectively, from the date of entry of the order granting the District's motion.

### A. Section 970.6

A local agency, such as the District, is required to pay a judgment entered against it in the fiscal year in which the judgment becomes final, if it has sufficient funds available. If not, the agency is required to raise the necessary funds and pay the judgment in the following fiscal year. (§§ 970, subd. (c); 970.4; 970.5; *Joseph v. San Francisco Housing Authority* (2005) 127 Cal.App.4th 78, 81–82.) An exception created by section 970.6 permits a court to authorize payment in as many as 10 annual installments, if the agency's governing body adopts an ordinance or resolution finding that immediate payment would cause an "unreasonable hardship" and the court makes a similar finding. (§ 970.6, subd. (a).)

The parties dispute the standard to be applied on appellate review of a hardship determination under section 970.6, with Sutter arguing for de novo review and the District seeking substantial evidence review. We side with the District. This is a typical situation in which "the trial court has, either by express statute or by rule of policy, a discretionary power to decide the issue." (9 Witkin, Cal. Procedure (5th ed. 2008), § 362, p. 418; *Williams v. City of Los Angeles* (1988) 47 Cal.3d 195, 204.) We therefore review for abuse of abuse of discretion. (*James L. Harris Painting & Decorating, Inc. v. West Bay Builders, Inc.* (2015) 239 Cal.App.4th 1214, 1221.) In so doing, we affirm the trial court's decision unless " ' "(1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions." ' " (*Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522, 530.) We will therefore affirm if the trial court's finding of unreasonable hardship and its decision to permit repayment over the full 10 years are supported by substantial evidence.

As support for de novo review, Sutter cites *Community Redevelopment Agency v. Force Electronics* (1997) 55 Cal.App.4th 622 (*Force Electronics*), in which the court was required to reconcile section 970.6 with Code of Civil Procedure section 1268.020, which permits a successful plaintiff in an eminent domain action to seek reconveyance of its

5

property if the condemnation judgment is not promptly paid. In approaching this issue, the court wrote: "The trial court's order permitting the Agency to pay the balance of the judgment over 10 years is appealable as an order after judgment under section 904.1, subdivision (a)(2). Review by this court is de novo. Appellate courts may independently determine the proper interpretation of a statute; they are not bound by evidence presented in the trial court or by the trial court's interpretation. [Citation.] Likewise, application of the interpreted statute to undisputed facts is subject to independent appellate determination." (*Force Electronics*, at pp. 629–630.) While we acknowledge that the court's language can be read to require de novo review of a hardship determination, the context of the statement suggests otherwise. The only issue actually addressed in *Force Electronics* was the conflict between the two statutory provisions. It was this issue, reconciling the statutes, to which the court intended to apply the de novo standard of review, not to the trial court's ruling on the issue of unreasonable hardship. In any event, because the court found section 970.6 unavailable to the local agency, it never reached the validity of the trial court's hardship determination. Any pronouncement on the standard of review applicable to that determination would therefore have been dictum.

Section 970.6 does not define "unreasonable hardship," and the meaning of the term has not been the subject of considered judicial interpretation.[3] Because of the

---

[3] In passing, *Force Electronics* commented that, under section 970.6, "the agency can only move and the court can only grant an installment payment plan if it finds that the agency is essentially unable to pay the award." (*Force Electronics*, *supra*, 55 Cal.App.4th at p. 634.) Because the court ultimately found section 970.6 unavailable to the agency, however, this comment must be regarded as dictum. No other published decision addresses the meaning of the term. A Law Revision Commission comment from 1980 states only: "In determining whether to order installment payments under this section, the court should consider all potential sources from which funds are available. For example, insurance may cover some or all of the public entity liability or the payment of the judgment in whole or in part may be passed on to the United States or some other entity under a grant, contract, or other arrangement. Section 970.6 is not intended to permit an insurance company or other source to minimize its obligation to make payment by permitting payment in installments." (Cal. Law Revision Com. com., 37A Pt. 1A West's Ann. Gov. Code (2010 ed.) foll. § 970.6, p. 170.)

District's particular circumstances, we find it unnecessary to go beyond its plain meaning. This is not a hard case. Mahadevan's declaration demonstrates that (1) the District does not have the funds to pay the judgment in a lump sum, (2) the District is unable to borrow the funds necessary to pay the judgment, and (3) a sale of assets to finance payment of the judgment would deprive the District of the funds required for it to operate, threatening bankruptcy. The same conclusions were reached by an accountant after an independent analysis of the District's finances and the District's board of directors in a formal resolution. By anyone's definition, an unreasonable hardship is imposed when the only means for payment of a judgment in a lump sum could result in the bankruptcy of a local public agency.

Sutter argues that Mahadevan's declaration does not demonstrate that the District explored all available avenues of payment prior to filing its motion. Section 970.6, however, contains no requirement that an agency provide affirmative evidence of such an exhaustive search. In any event, Mahadevan states that the District "explored options to satisfy the Judgment, including borrowing against other assets," but was unable to come up with a solution.

Sutter claims that the District can raise revenue by taxing or issuing bonds, but it makes no attempt to demonstrate that these represent a realistic means for the District to make a lump sum payment of the judgment. Contrary to Sutter's claim, the District lacks the taxing power and must rely on the county board of supervisors to impose a levy. Further, such taxation is limited in amount and purpose (see Health & Saf. Code, §§ 32202, 32203), and Sutter makes no attempt to demonstrate that this power could be used to raise the necessary amount of cash required in time to pay the judgment in a lump sum, even assuming cooperation by the board. Nor is it clear that a bond issue could be used to pay the judgment, even assuming it could be issued in time. A health care district bond issue is limited in amount to "a maximum of 50 percent of the average of the district's gross revenues for the preceding three years" and may be issued only "to provide funds for the acquisition, construction, improvement, financing or refinancing of an enterprise, or the refunding of any bonds, notes, loans, or other indebtedness of the

7

district." (Health & Saf. Code, § 32316.) Again, Sutter makes no attempt to demonstrate that a bond issue is a realistic alternative for the District here.

In other words, the sole realistic avenue available to the District to make a lump sum payment of the judgment that is supported by the evidence, sale of the offices, carries a substantial risk of undermining the District's operations, perhaps resulting in bankruptcy. Sutter hardly argues differently. Rather, it attempts to minimize the significance of a sale of the offices by characterizing them as "passive investments." The characterization ignores the importance of the offices to the District's operations. First, income from the properties helps to fund the District, making its operations possible. Second, and more important, ownership of the properties *is*, in effect, the function of the District. The purpose of a local health care district is to "fulfill the function of protecting the public health and welfare by furnishing hospital services in areas where hospital facilities are for some reason inadequate." (*Talley v. Northern San Diego Hosp. Dist.* (1953) 41 Cal.2d 33, 40, overruled on other grounds, *Muskopf v. Corning Hospital Dist.* (1961) 55 Cal.2d 211, 213.) Selling the offices would put the District out of business.

Sutter does not shy from this conclusion. Its bottom-line argument is that we would all be better off if the District *were* put out of business, arguing, "the only true function the District accomplishes is to fund and perpetuate its own bureaucracy." According to Sutter, "the District is a shell operation that owns passive investment properties outside the District boundaries . . . . The District does not own, govern, or operate a hospital, or participate in the ownership, governance, or operation of a hospital, and it does not perform any health care-related service or function." Selling the offices, it is claimed, would permit the District to pay the judgment and leave it "*with approximately $15 million in cash to use to support its statutory mission for its constituency*. This sum would allow the District to do far more for its constituents than it has done for many years, or will do until after [the year] 2024." Even assuming public policy would be better served if the District sold the offices to a private owner, that is a

8

decision for the county's officials and residents to make.[4]  The purpose of section 970.6 is precisely to prevent a large judgment from bringing an involuntary end to the operations of a local public entity.

Sutter also contends the District should be required to pay the judgment because the installment payment mechanism makes it "an unwilling creditor."  Assuming this is true of Sutter, it is also true of every judgment creditor when a motion is granted under section 970.6.  In enacting the statute, the Legislature expressed a willingness to create such creditors when to do otherwise would impose an unreasonable hardship on a local public entity.  The decision relied on by Sutter in contending it cannot be made an unwilling creditor, *Force Electronics*, was decided under the eminent domain statute.  As discussed above, that statute permits a judgment creditor to repossess its property if prompt payment is not made, demonstrating the Legislature's intent not to require persons whose property is subject to eminent domain to wait for payment.  There is no similar statutory remedy available here.

Sutter also argues the District did not demonstrate that it would need the full 10 years to pay the judgment.  On the contrary, the District submitted the testimony of an accountant that a 10-year installment plan was necessary to avoid "significantly impacting its ability to continue to service its residents."  This testimony provides substantial evidence to support the trial court's grant of the full 10 years.  Sutter challenges the testimony as "conclusory," but Sutter introduced no evidence to cast doubt on its validity.  The trial court did not err in relying on an unchallenged expert opinion.

**B.  Section 984**

The original judgment in this action, entered January 8, 2014, awarded Sutter "post-judgment interest at a rate of 7% per annum from the date of Judgment."  In

---

[4] Addressing this issue, Mahadevan asserted that the District "uses its tax advantages to keep the rents [at its offices] affordable for individual physicians and small physician groups, who cannot afford the commercially built properties . . . ."  Sutter disputes this claim, but the issue is not pertinent here.  The propriety of the continued existence of the District is not a cognizable issue on this motion.

9

granting the motion under section 970.6, the trial court effectively amended the judgment nunc pro tunc, stating, "[t]he first of the ten installment payments shall be paid by June 30, 2015 and will include interest on the amounts owed since entry of Judgment . . . at the U.S. Treasury bill rate as of January 1 of each year." Sutter contends the trial court erred in reducing the rate of interest, both retroactively and prospectively.

The trial court's original imposition of a 7 percent rate was presumably based on the default rate established in the state Constitution, which sets the rate for payment of postjudgment interest by a local public entity in the absence of any applicable statute. (Cal. Const., art. XV, § 1; *City of Clovis v. County of Fresno* (2014) 222 Cal.App.4th 1469, 1482.) There is no indication that either party challenged the imposition of this rate of interest at the time the judgment was rendered.[5]

The trial court's award of postjudgment interest in the order granting the District's motion was based on section 984, subdivision (e), which states in relevant part:

"(e) The following provisions apply to all judgments for periodic payment under this section against a public entity: [¶] . . . [¶] (2) Interest at the same rate as one-year United States Treasury bills as of January 1, each year shall accrue to the unpaid balance of the judgment, and on each January 1 thereafter throughout the duration of the installment payments the interest shall be adjusted until the judgment is fully satisfied."

To the extent the trial court's order is prospective, we find no error. By its terms, the interest rate in section 984, subdivision (e)(2) is applicable to "all judgments for periodic payment under this section against a public entity." Section 984, subdivision (c)

---

[5] In fact, 7 percent appears not to have been the correct rate of interest. On January 1, 2014, a week prior to the trial court's entry of judgment, an amendment to section 970.1 became effective that set the rate of postjudgment interest on judgments against a local public entity at "the weekly average one year constant maturity United States Treasury yield at the time of the judgment plus 2 percent," not to exceed 7 percent. (§ 970.1, subd. (c); Stats. 2013, ch. 424, § 3, p. 3825; *San Diegans for Open Government v. City of San Diego* (2016) 247 Cal.App.4th 1306, 1314 [a statute enacted at a regular session of the Legislature becomes effective on January 1 of the following year].) Because the District has not challenged the 7 percent rate, either at the time the judgment was entered or in this appeal, any objection to the trial court's error has been waived.

expressly refers to a judgment rendered pursuant to section 970.6 as one "to be paid by periodic payments."[6] Given this reference, a judgment requiring installment payments under section 970.6 must be deemed a "judgment[] for periodic payment under this section," even though the judgment was not literally rendered under "this section," i.e., under section 984. Imposition of the interest rate established by section 984, subdivision (e)(2) on a prospective basis was therefore appropriate.

Sutter's argument to the contrary is based on subdivision (f) of section 984, which states that "[n]othing in this section shall prevent the parties from agreeing to settle an action on any other terms." The District's failure to dispute the rate of postjudgment interest when it was originally imposed, Sutter argues, "is tantamount to agreeing to pay the interest specifically listed in the judgment." Contrary to Sutter's claim, acceding to the compulsion of the law is not the same as agreeing to it. We need not pursue that issue further, however, because the "tantamount to agreeing" argument is irrelevant. Subdivision (f) permits a different interest rate (among other things) to be imposed as part of a settlement, but there is no evidence in the record to suggest that the interest rate in the judgment was imposed as a result of the parties' "agreeing to settle" the action. Rather, it was imposed by the court after Sutter was successful in an arbitration against the District. For that reason, subdivision (f) is, by its terms, inapplicable.

That does not necessarily resolve the issue of the trial court's decision to amend the judgment retroactively to change the rate of postjudgment interest accruing from the entry of judgment until its grant of the motion. Here we are guided by the language of the statute. As noted, section 984, subdivision (e)(2) applies to "judgments for periodic payment under this section against a public entity." As originally formulated, the judgment against the District was not one for periodic payments; it was a lump sum judgment. Only later was the judgment converted to one for periodic payments by the

---

[6] Section 984, subdivision (c) reads, in its entirety, "A judgment against a public entity may be ordered to be paid by periodic payments only if ordered under Section 667.7 of the Code of Civil Procedure or Section 970.6, or if the public entity has made an election under subdivision (d), or if the parties have agreed to it."

11

trial court's grant of the District's motion under section 970.6.  Accordingly, as the judgment was originally entered, it was not subject to the interest rate established in section 984, subdivision (e)(2).

We find this conclusion reinforced by other language in section 984, subdivision (e)(2).  Although a motion under section 970.6 will, in most cases, be granted after entry of a judgment, section 984, subdivision (e)(2) does not state that its prescribed interest rate shall apply retroactively or from the date of entry of the judgment.  Instead, it states that the specific interest rate "shall accrue to the unpaid balance of the judgment."  At the time the trial court granted the District's motion, the "unpaid balance" of the judgment against the District included nearly 18 months' of postjudgment interest accruing at the rate of 7 percent annually.  The failure of the statute expressly to impose the interest rate retroactively and its reference to the "unpaid balance" of the judgment suggests that its interest rate should be imposed on a prospective basis, based on the unpaid balance of the judgment existing at the time the judgment becomes one for periodic payments.

The District argues that "[n]othing in the statute provides that a different post-judgment interest rate shall apply and accrue until the issuance of the trial court's ruling that the judgment should be subject to periodic payments."  While this is true, the converse is also true; as noted above, it does not provide that the prescribed interest rate shall apply from the date of entry of judgment.  The statute's failure specifically to address this issue is therefore not conclusive either way.  We find it more persuasive that, as noted above, the interest rate established by section 984, subdivision (e)(2) expressly applies to a judgment for periodic payments.  Prior to the grant of a motion under section 970.6 (or other authority for periodic payments), the judgment is one for a lump sum, making the interest rate of subdivision (e)(2) inapplicable.

The District also argues that imposition of an initial higher rate would contravene the Legislature's intent because section 984 applies a "reduced" interest rate to periodic payment judgments.  The District, however, cites no actual evidence of this purported legislative intent beyond the language of section 984.  For the reasons discussed, we are

12

unwilling to infer, solely on the basis of the statutory language, that the Legislature intended to alter the amount of interest already accrued under a judgment when a local public entity seeks such conversion at some point after a judgment has been entered.

## DISPOSITION

The order of the trial court granting the District's motion for relief under section 970.6 is reversed to the extent it purports to alter the rate of postjudgment interest applicable to the judgment prior to the date of entry of the court's order granting the relief. The order is in all other respects affirmed. The matter is remanded to the trial court with directions to enter an amended judgment consistent with this decision. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)

_____
Dondero, J.

We concur:


_____
Humes, P. J.


_____
Margulies, J.

A146002  *Sutter Health v. Eden Township Healthcare District*

Trial Court:           Alameda County Superior Court

Trial Judge:          Hon. Kimberly L. Colwell

Counsel:

     King and Spalding LLP, Stephen L. Goff, William Scott Cameron, for Plaintiffs and Appellants

     Archer Norris, W. Eric Blumhardt, Sharon C. Collier, for Defendant and Respondent

A146002  *Sutter Health v. Eden Township Healthcare District*