Filed 3/19/26

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ANNA SHEERER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>THOMAS PANAS,<br><br>    Defendant and Respondent;<br><br>CALIFORNIA DEPARTMENT OF CHILD SUPPORT SERVICES,<br><br>    Intervener and Respondent. | A171804<br><br>(San Mateo County<br>Super. Ct. No. 19FAM02588A) |

Appellant Anna Sheerer appeals a trial court order modifying the child support payments owed by her ex-husband, respondent Thomas Panas.  She contends that the court failed to account for Panas's bonus income in determining child support.  Relatedly, Sheerer argues the court violated her due process rights by failing to hold an adequate hearing on her request to account for Panas's bonus income.  Intervener California Department of Child Support Services agrees with the former argument and does not take a

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts  I, II.A, and III.

position on the latter.[1]  In the unpublished portion of this opinion, we hold the court erred on the merits and reverse the order.

Unfortunately, we must address another issue, which we do in the published portion of this opinion.  As an in propria persona litigant, Panas submitted a respondent's brief that attributes quotes to published cases in which no such quote appears and to cases that do not exist, and Panas's nonmanufactured authorities do not discuss the topics for which they are cited.  His brief also does not conform to the California Rules of Court (hereinafter Rules) regarding its contents, formatting, and directive to provide support for factual assertions with citations to the record.  (See Rule 8.204.)  In a declaration submitted to this court, Panas explained the fabrications were due to his use of a generative artificial intelligence (AI) tool to write the brief.

Division Three of the Second District Court of Appeal recently published an opinion "warning" that "no brief, pleading, motion, or any other paper filed in any court should contain *any* citations—whether provided by generative AI or any other source—that the attorney responsible for submitting the pleading has not personally read and verified." (*Noland v. Land of the Free, L.P.* (2025) 114 Cal.App.5th 426, 431 (*Noland*).)  The court emphasized that any attorney who fails to heed the warning faces sanctions and potential discipline.  (*Id.* at p. 445.)  We partially publish this opinion to extend that warning to in propria persona litigants.

---

[1] The California Department of Child Support Services submitted its brief on behalf of the public interest in accordance with a transfer of interest from the San Mateo County Department of Child Support Services (the DCSS).

# I.  BACKGROUND

Sheerer and Panas were a married couple that began dissolution proceedings in 2019.  The couple have two children from their marriage and have joint physical custody of them on a 50/50 time share.

In 2020 and 2021, the trial court issued several child support orders following hearings on the matter.  Initially, in September 2020, the court ordered Panas to pay child support of varying monthly amounts, which were calculated as a function of the parties' relative incomes each month.  In November 2020, the court entered a new order with additional findings regarding Panas's fluctuating income, and the court included a *Smith-Ostler* provision,[2] ordering "additional income received by either party in excess of the base income used in the initial support order" to be included in calculating additional child support.  In December 2021, the court entered another new order, detailing the *Smith-Ostler* provision's mechanics, calculating retroactive payments, and reaffirming that the *Smith-Ostler* provision would be prospectively "calculated on a monthly basis."

In June 2023, Sheerer moved to modify the existing child support order due to a change in both parties' incomes and her employment status.  At a hearing in November 2023, the court stated that it would adopt the DCSS's guideline calculation that Panas pay $2,388 in monthly child support to Sheerer, retroactive to July 1, 2023.  Because of the retroactive nature of the order, the court found Panas in arrears and ordered him to make monthly payments until the balance was paid.  DCSS raised the point that "there are going to be other arrears in this case relating to a Smith Ostler calculation,"

---

[2] A child support order that requires a percentage of bonus income to be paid as additional child support is commonly referred to as a "*Smith-Ostler* provision" because it is derived from *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, 41–42 (*Smith-Ostler*).)

3

and the court clarified that the arrears payments were only "towards the order for child support that the Court just made today."

The trial court's subsequent written order filed November 15, 2023 was substantively identical to what the court had stated at the hearing and consequently lacked a *Smith-Ostler* provision. The accompanying DCSS calculation did not include Panas's bonus income, nor did it reference any income from Panas's restricted stock units (RSUs). Rather, it listed Panas's "Monthly Taxable & Non-Taxable Gross Income" as $19,640, which matched the most recent monthly wage that Panas declared on his October 2023 income and expenses (I&E) declaration. Thus, the DCSS's guideline calculation excluded the $4,500 average monthly commission or bonus income that Panas declared on his October 2023 I&E declaration.

The trial court held hearings in February 2024 and May 2024, each of which focused on factual disputes regarding both parties' financial limitations and Sheerer's difficulties in finding employment. The February 2024 hearing resulted in a formal seek work order directed at Sheerer, and the court retained retroactive jurisdiction on child support and Panas's payment of arrears. At the May 2024 hearing, it was brought to the trial court's attention that the November 2023 order "did not include a Smith Ostler provision" despite there being one "in the prior order." After hearing the parties' arguments, the court found Sheerer in compliance with the seek work order, reduced Panas's monthly payments on arrears, and otherwise left the November 2023 order in place, reserving jurisdiction "with regard to the request for the Smith Ostler [provision]."

In the meantime, Panas filed an updated I&E declaration in March 2024 which listed his average monthly gross salary as $19,640 and his average monthly commissions or bonuses as $25,925. The March 2024 I&E

4

declaration also appended three earnings statements from mid-March, two of which revealed that Panas was compensated with RSUs valued at $8,387.26 and $45,918.74 on March 12 and March 14, respectively, bringing his total year-to-date RSU compensation to $121,531.41.[3] In May 2024, Panas filed a new I&E declaration that again listed his average monthly gross salary as $19,640 but changed his average monthly commissions or bonuses to $2,160.[4]

At the next hearing in July 2024, DCSS explained to the trial court that Sheerer was still complying with the seek work order yet she remained unemployed, preventing the recalculation of child support. Sheerer then relayed her difficulties finding employment and again requested a new calculation for child support that accounted for Panas's bonus and RSU compensation. In response, Panas asserted that Sheerer was not complying with the seek work order, and he sought a reduction in child support payments and clarity on a *Smith-Ostler* provision. The parties traded accusations that the other was harming the children's interests until the court interjected.

---

[3] The other statement showed that Panas was paid a salary of $9,064.99 for 80 hours for the period from March 4 to March 17, 2024, bringing his year-to-date salary earnings to $45,389.94. While the statements did not list any bonuses earned in that period, they all showed that Panas had received $25,925.87 in the year to date for "AIP Payout."

[4] We observe that $2,160 is mathematically equivalent to dividing $25,925—the amount listed on Panas's March I&E declaration as his average monthly bonus (and the same amount listed on his March 2024 earnings statements as his year-to-date "AIP Payout")—by 12 months. The May 2025 I&E declaration also appended three earning statements for pay periods in 2024 from April 1 to April 14, April 15 to April 28, and April 29 to May 12. Those statements revealed that Panas was paid $9,307.02 for each 80 hour period, but he had not received any more earnings categorized as RSUs or AIP Payout.

The trial court stated: "[T]his is obviously a very contentious situation. What this court's concern is . . . the support and the amount of time Ms. Sheerer has been unemployed. Certainly if the tables were turned, Ms. Sheerer, you would want Mr. Panas to be employed and contributing to the children's lives and financially contributing. [¶] So at this time, I'm going to deny the request for a Smith-Osler. [¶] I'm going to deny the request to cut support in half." The court also increased Sheerer's obligations under the seek work order. The court did not mention Panas's total compensation in either its verbal or written order. Sheerer appealed.

## II.    DISCUSSION

### A.    The Trial Court Erred By Failing to Account for Panas's Bonus and RSU Compensation in the Child Support Calculations

The abuse of discretion standard applies to child support awards and a trial court's determination to grant or deny a request to modify child support. (*In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 529.) The abuse of discretion standard is not a unified standard. (*Ibid.*) In applying it, appellate courts will uphold the trial court's factual determinations that are supported by substantial evidence, assess the trial court's legal interpretations de novo, and consider "whether the trial court reasonably exercised its discretionary authority—that is, whether any judge reasonably could have made such an order." (*Ibid.*)

"California has a strong public policy that favors adequate child support." (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 283, superseded by statute on another ground as stated in *In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1049; see Fam. Code, §§ 4050–4076[5].) The Legislature expressed that policy through the uniform child support

---

[5] Further statutory references are to the Family Code unless otherwise specified.

6

guideline.  (*Cheriton*, at p. 283.; see § 4053, subd. (e) [" 'The guideline seeks to place the interests of children as the state's top priority' "].)

Guideline child support is calculated by applying a mathematical formula to the relative incomes of the parents, and it "is presumed to be the correct amount of child support to be ordered."  (§§ 4055, 4057; see § 4053, subd. (c) ["The guideline takes into account each parent's actual income and level of responsibility for the children"].)  Section 4053 further lays out principles the trial court must adhere to, principles which emphasize that each parent must prioritize and provide support commensurate with their individual ability so that his or her children share in the standard of living of both parents across two homes with relative parity.

Section 4058 broadly defines a parent's "annual gross income" to mean "income from whatever source derived" (other than child support payments and income from public assistance programs based on need).  (§ 4058, subds. (a), (c).)  The statute includes "bonuses" as income in a non-exhaustive list of examples (*id.*, subd. (a)(1)), and compensation in the form of stock options is also treated as income for purposes of calculating child support once there are no legal restrictions on the parent's ability to exercise the option and sell the shares.  (*In re Marriage of Macilwaine* (2018) 26 Cal.App.5th 514, 530–532.)  Each parent's annual gross income is used to compute their annual net disposable income (§ 4059), which in turn is used to calculate each parent's monthly net disposable income (§ 4060), which is the key input to the guideline's formula for determining the amount of child support (§ 4055).  However, if a parent's monthly income fluctuates—such as from discretionary bonuses—the court may adjust the child support order as appropriate.  (§§ 4060, 4064.)  A court may accommodate unpredictable income through a *Smith-Ostler* provision, but the method a court fashions to

account for such income is left to the court's discretion so long as a parent's support obligations include all income that the parent actually receives. (*In re Marriage of Mosley* (2008) 165 Cal.App.4th 1375, 1387.)

Here, the trial court erred because it failed to account for Panas's bonus income and RSUs in calculating child support. The November 2023 order ended the *Smith-Ostler* provision that had been in place, and the court did not implement another method for requiring Panas to pay support obligations based on income that included any bonuses or RSUs that he received. The court did not make any findings under subdivision (b) of section 4057 that would permit the court to deviate from the presumptively correct statewide uniform guideline formula amount, which must include all income. Nor did the court state in writing or on the record the information required in subdivision (a) of section 4056 to do so. The court's stated concern regarding the amount of time that Sheerer has been unemployed does not allow it to exclude Panas's bonus or RSU income from his annual gross income for the purposes of child support obligations. For this reason, we reverse the trial court's order of September 9, 2024.[6]

Because we reverse the trial court's order on the merits, we need not reach Sheerer's contention that the court violated due process by depriving her of a meaningful hearing. However, we disagree with Sheerer's characterization that the court "refused to engage" with her requests or with the evidence. The record reveals that the court was patient in hearing each

---

[6] Panas's "extensive reliance on nonexistent legal authority" in his respondent's brief justifies disregarding the brief in toto, which we do. (*Noland, supra,* 114 Cal.App.5th at p. 436.) We address this issue further *post* section B. We acknowledge Panas's admission that his respondent's brief contains fabrications as stated in his declaration submitted to the court. We otherwise grant Sheerer's motion to strike the remainder of the declaration as an improper sur-reply. (See Rule 8.200(a)(4).)

party's arguments and provided ample opportunity for Sheerer to be heard. While it took several hearings over the course of half a year for the court to rule on Sheerer's request to reimpose a *Smith-Ostler* provision after the November 2023 order, there is no basis for Sheerer's assertion that the court impeded her ability to develop the facts. Instead, the record shows that the matter was continued several times for various reasons, none of which suggest the court disregarded procedural safeguards.[7] The court merely made an error, which we instruct it to correct on remand.

## B. Panas's Violations of the California Rules of Court

Despite his self-representation, we hold Panas to the same standard as an attorney. (*Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543; see also *Keitel v. Heubel* (2002) 103 Cal.App.4th 324, 334–335 ["A party, no less than his attorney, should not be permitted to escape the consequences of his or her abusive litigation tactics"].) Over three decades ago, our high court explained that "[a] doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation."

---

[7] The first hearing on Sheerer's request to modify child support in August 2023 was continued because the parties and DCSS had failed to meet and confer beforehand and because DCSS had not received information regarding Sheerer's unemployment benefits. At the February hearing, Sheerer noted that Panas's compensation included a "bonus and stock options," but she admitted that he had not submitted an updated I&E declaration, stating: "so we don't know what his current salary is." Panas submitted updated I&E declarations prior to the next hearing in May 2024, and therefore Sheerer had the opportunity to argue that Panas had taken a new job with a reduced salary but received "most of his income via RSUs and bonus." The court then allowed Panas and Sheerer to respond to each other's arguments before it addressed the seek work order and Panas's payment on arrears, and the court reserved retroactive jurisdiction on a *Smith-Ostler* provision, which it ruled on at the next hearing.

9

(*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 985.)  This statement has grown truer in an age where litigants can access AI tools that purport to do lawyering.  "In the last two [and a half] years, many courts have confronted briefs populated with fraudulent legal citations resulting from [parties'] reliance on generative AI."  (*Noland, supra*, 114 Cal.App.5th at p. 443.)

In his respondent's brief, Panas cited at least two cases that do not exist:  "*In re Marriage of Thomson* (1984) 157 Cal.App.3d 568, 578" and "*Marriage of Mendlowitz* (2019) 40 Cal.App.5th 990."  He further fabricated quotes that appear nowhere in the (real) cases cited.  In his declaration "clarifying facts" filed in this Court after Sheerer filed a motion to strike respondent's brief, Panas explained that his "error" in providing fake quotations and citing nonexistent case law was caused by his use of an AI tool and his failure to verify his citations.  He averred that he "did not knowingly submit false information to the Court."  His lack of knowledge, of course, is a direct result of his failure to verify citations, a requirement of all attorneys and self-represented litigants responsible for briefs filed in this Court.  Respondent's conduct in this regard is a patent violation of the Rules of Court and alone, merits striking his brief.  (See *Noland*, *supra*, 114 Cal.App.5th at pp. 442–443, and cases cited.)

But aside from Panas's purported obliviousness to the falsity of his legal citations and quotes, he also referenced hearings in the present case that appear nowhere in the record but we will not expend judicial resources verifying whether the hearings or their purported contents are AI hallucinations too.  Further, Panas failed to format the brief in accordance with Rule 8.204 by omitting a table of authorities, page numbers, and citations to the record for each reference to the proceedings below.  (See Rule 8.204(a)(1)(A), (C), (b)(7).)  Many of Panas's (unsupported) factual assertions

are irrelevant, not least his allegations that the court sanctioned Sheerer and that Sheerer failed to comply with court orders.  He then had the temerity to request this court to "[r]efer this matter to the trial court for consideration of sanctions" against Sheerer.

"Our legal system, indeed the social compact of a civilized society, is predicated upon respect for, and adherence to, the rule of law." (*People v. Chong* (1999) 76 Cal.App.4th 232, 243.)  The rule of law is founded upon the principle that courts must impartially apply the law to facts.  That foundation is threatened when litigants falsify the truth, especially when done by using technological innovations that can spin persuasive webs of untruths and invent legal principles or authorities.

Thus, our warning to litigants is not merely an admonition to double-check citations and otherwise fastidiously comply with the Rules of Court; it is to be at all times truthful and to be responsible in crafting any written arguments presented in this Court.  (See *People v. Alvarez* (2025) 114 Cal.App.5th 1115, 1119 [" 'Honesty in dealing with the courts is of paramount importance, and misleading a judge is, regardless of motives, a serious offense' "].)  We further caution that our redress for false and missing citations is not limited to disregarding a brief.  "We may impose monetary sanctions pursuant to our own motion for unreasonable violations of the rules governing appeals." (*Keitel v. Heubel, supra*, 103 Cal.App.4th at p. 340; *Noland, supra*, 114 Cal.App.5th at p. 442; Rule 8.276(a)(4).)  However, given Panas's admission of his error and considering that it would not be in the best interest of the children at the heart of the underlying proceedings, we choose not to do so here.

## III.   DISPOSITION

The child support order of September 9, 2024 is reversed and we remand with instructions to the trial court to reassess Panas's child support obligation based on a consideration of his full income, including bonuses and RSU compensation.  Sheerer is entitled to her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

_____
Moorman, J.*

WE CONCUR:


_____
Brown, P. J.


_____
Streeter, J.


*Sheerer v. Panas*/A171804


_____

* Judge of the Superior Court of California, County of Mendocino, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13

## _Sheerer v. Panas_ (A171804)

Trial Court:      San Mateo County Superior Court

Trial Judge:      Hon. Cristina Mazzei

Attorneys:

Covington & Burling, Breanna Katherine Jones; Family Violence Appellate Project, Cory Delfin Hernandez, Arati Vasan, Jennafer Dorfman Wagner for Petitioner and Appellant.

Thomas Panas, in pro. per., for Defendant and Respondent.

Rob Bonta, Attorney General of California, Cheryl Lynn Feiner, Senior Assistant Attorney General, Maureen Chinyere Onyeagbako, Supervising Deputy Attorney General, Pablo Nicholas Rossenblum, Deputy Attorney General for Intervenor and Respondent.